**Reuben KLEIN and Elaine D. Klein, Appellants,**

v.

**SHELL OIL COMPANY, a Corporation, Appellee.**

**No. 18742.**

United States Court of Appeals Eighth Circuit.

Dec. 12, 1967.

Gerald S. Rufer, of Rufer, Blatti, Hefte & Pemberton, Fergus Falls, Minn., for appellants.

Robert E. Bowen, of Cant, Haverstock, Beardsley, Gray & Plant, Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

This appeal by plaintiffs below presents for our determination the single

question whether the district court erred in failing to grant plaintiffs a jury trial. The basic issue, however, underlying the propriety of the court's denial of a jury trial is whether plaintiffs' lawsuit is, as they characterize it, a legal action to recover upon a debt arising out of a fully executed contract for the sale of real estate, or, as defendant contends, merely an equitable action for specific performance of an executory contract, pursuant to an option agreement. We shall hereinafter refer to the parties as they were designated in the district court.

Plaintiffs originally commenced their suit in a Minnesota state court. Defendant timely removed the case to the United States District Court for the District of Minnesota on the ground of diversity of citizenship. The district court, Honorable Edward J. Devitt, heard the case without a jury and dismissed the action upon the merits. We affirm.

The controlling facts are not in dispute. On April 2, 1965 plaintiffs and the defendant entered into a written contract which granted defendant an option to purchase from plaintiffs within a specified time a tract of land located at the southeast corner of Interstate Highway No. 94 and Minnesota Highway No. 210 in Ottertail County, Minnesota. The purchase price was fixed at $38,000.00. Defendant's obligation under the contract, however, was subject to the performance or occurrence of certain conditions, such as the furnishing of evidence of plaintiffs' title. Of particular significance is the following condition contained in Paragraph 5 of the option agreement:

"If, on the one hundred twentieth day after the exercise date or on any earlier date that Shell may specify by notice to Seller, each of the following conditions obtains or has been waived by Shell by notice to Seller: * * * (b) all applicable laws and ordinances authorize, and all necessary licenses and *permits are in effect* for, the construction and operation on the premises of an automobile service station in accordance with Shell's plans and specifications: Seller shall deliver to Shell on such date at Fergus Falls, Minnesota a recordable deed conveying the premises to Shell * * *." (Emphasis supplied.)

After its execution, and pursuant to a mutual understanding, the option agreement was modified to require plaintiffs to grant defendant an easement and construct a driveway thereon from the easterly property line of the tract to the existing point of access to Highway No. 210.

Defendant elected to exercise the option on July 15, "subject to the provisions of the option agreement." After such election considerable correspondence and conferences ensued between the parties in regard to the elimination of any defects in title. Additionally, both parties discussed the matter of obtaining an "access driveway or entrance permit" from the Minnesota Highway Department. Defendant consistently maintained that under the terms of the contract the acquisition of an access permit was a condition precedent to its obligation to purchase the property. Plaintiffs, on the other hand, assumed the position that, direct access from Highway 210 was not a "necessary permit" to the operation of a service station, and that such a station could be constructed and operated "without any further necessary permit, license or restriction." Efforts to obtain the access permit were unsuccessful, and thereafter defendant refused to accept the warranty deed tendered by plaintiffs on the basis that the contract had automatically terminated since certain of the conditions described in Paragraph 5 were neither satisfied nor waived by the defendant prior to the 120 day expiration date.

In the district court plaintiffs predicated their legal action on the existence of a fully executed contract. They contended that they had fully complied with all the terms and conditions specified in the option agreement, that defendant had exercised its option to purchase and had in fact purchased the property, and was

therefore indebted to plaintiffs for the balance due on the agreed price.

At a pre-trial conference held on September 29, 1966 the district court, over plaintiffs' protest, ordered the issues in the case tried before the court without a jury on the theory that plaintiffs' action could traditionally be characterized only as one in equity for specific performance of an executory contract and therefore plaintiffs were not entitled to a jury trial. After a plenary trial the court, in its memorandum opinion, stated:

"The Court is of the view that a direct access permit from the Minnesota Highway Department was a ' * * * necessary * * * permit * * * ' as required by the option agreement, and that the necessity of securing it was not waived by Shell's conduct. It did not appear that Mr. Klein was misled or imposed upon in any way. He impressed the Court as a knowledgeable and competent business man. He had had considerable business experience and had dealt previously with oil companies in the sale of property for gasoline station purposes. Indeed, he himself had unsuccessfully requested the access permit which Shell later sought from the Minnesota Highway officials. He appreciated the importance of such a permit to the successful operation of the gasoline station.

"It seems to me that, under the evidence, justice requires that the Court leave the parties where it found them, and that is what I do * * *."

Plaintiffs do not launch a frontal attack upon the court's ultimate findings and conclusion. As stated above, they rest their claim for reversal on the single ground that they were denied their constitutional right to a jury trial under the Seventh Amendment.

■■■ By its terms, however, the Seventh Amendment applies only to "suits at common law," and consequently guarantees trial by jury only in those actions which would have been triable before a jury under the common law at the time the Seventh Amendment was adopted. Thus, notwithstanding the fact that the Federal Rules of Civil Procedure have abolished the distinction between "actions at law" and "suits in equity" in favor of a uniform system of procedure, we must nonetheless revert to that ancient distinction as a guideline in determining what issues in the present civil action are historically legal and therefore triable before a jury. We are mindful that plaintiffs' right to a jury trial in the federal courts is to be determined on the basis of federal law in diversity as well as in other actions. See, Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L. Ed.2d 691 (1963), wherein the Supreme Court stated:

"Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, * * * but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." 372 U.S. at 222, 83 S.Ct. at 610.

In support of their argument plaintiffs revert to several Supreme Court decisions which they contend articulate a strong federal policy in favor of assigning the decision of disputed fact questions to the jury. See, e. g., Simler v. Conner, supra; Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed. 2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). We fully subscribe to the holdings of these cases, but consider their principles inapropos here. Contrary to the thrust of plaintiffs' argument, none of these cases, or others pertinent to the jury-trial issue, insures the right to a jury trial where, as here, purely equitable, as distinguished from legal, or a combi-

nation of legal and equitable relief is sought.

We share the Supreme Court's concern for the preservation of the right to a jury trial in appropriate cases. The Supreme Court, however, has not abrogated the distinction between legal and equitable issues insofar as it governs the requirement of a jury trial. In Beacon Theatres, Inc. v. Westover, supra, and Dairy Queen, Inc. v. Wood, supra, the Supreme Court reaffirmed a litigant's right to a jury trial on "legal issues" which are intermingled with equitable claims in the same action, even though the basic relief sought was equitable in nature.

In Byrd v. Blue Ridge Rural Electric Cooperative, Inc., supra, and Simler v. Conner, supra, the Supreme Court preserved a litigant's right to trial by jury in cases in which a legal issue traditionally triable before a jury under federal law has been classified as triable before the court by virtue of a peculiarity in state law.

■■ The authorities are unanimous in holding that the remedy of specific performance is purely equitable in nature. Travel Consultants, Inc. v. Travel Management Corp., 367 F.2d 334, 337 (D.C.Cir. 1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967); Sinclair Refining Co. v. Miller, 106 F. Supp. 881, 885 (D.Neb.1952). See also 5 Moore, Federal Practice ¶ 38.21, at 179 (2d ed. 1966); 2B Barron and Holtzoff, Federal Practice and Procedure § 875.1, at 43–44 (Rules ed. 1961); 49 Am.Jur. Specific Performance § 2 (1943). Traditionally, there has been no right to a trial by jury in an action for specific performance presenting issues which are purely equitable, in contradistinction to intermingled legal and equitable claims, such as in Beacon Theatres, Inc. v. Westover, supra. See, e. g., Rash v. Peoples Deposit Bank & Trust Co., 192 F.2d 470, 471 (6th Cir. 1951), cert. denied, 343 U.S. 909, 72 S.Ct. 639, 96 L.Ed. 1326 (1952); Holiday Inns of America, Inc. v. Lussi, 42 F.R.D. 27, 29 (N.D.N.Y.1967),

Fraser v. Geist, 1 F.R.D. 267, 268 (E.D. Pa. 1940).

This record convincingly refutes plaintiffs' contention that they have the right to maintain an action to recover upon an indebtedness due them. We find no merit whatever in their assertion that defendant's indebtedness to plaintiffs arises out of a fully executed contract, and that the full unpaid purchase price constitutes that indebtedness.

■ The law is well settled that whether plaintiffs are entitled to a jury trial cannot be determined solely on the basis of allegations contained in the complaint, or on the form of relief sought therein or on the postulate advanced in their brief to the effect that:

> "This is an action for money to recover upon a debt. Defendant's indebtedness to plaintiffs allegedly arises out of a fully executed contract of sale of real estate. The unpaid purchase price constitutes the indebtedness."

The question at hand must be resolved not merely by the form of the complaint but by an appraisal of the basic nature of the claims or issues presented, and the type of relief sought. Although the form of relief sought by a plaintiff is not necessarily determinative of the method of trial, it is a factor in characterizing issues in the case as either legal or equitable. This principle was recognized by the Supreme Court in Dairy Queen, Inc. v. Wood, supra, where Mr. Justice Black stated:

> "The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."

369 U.S. at 477–478, 82 S.Ct. at 899.

See Simler v. Conner, supra, 372 U.S. at 223, 83 S.Ct. 609, 9 L.Ed.2d 691; Beaunit Mills, Inc. v. Eday Fabric Sales Corporation, 124 F.2d 563, 565–566 (2d Cir.

1942) ; 5 Moore, Federal Practice ¶ 38.16, at 148–63 (2d ed. 1966) ; 2B Barron and Holtzoff, Federal Practice and Procedure § 873 at 31–39 (Rules ed. 1961). But see Canister Co. v. Leahy, 182 F.2d 510, 513 (3d Cir. 1950).

Contrary to plaintiffs' position, however, the contract was clearly executory in nature. Upon exercising the option defendant became obligated to purchase the real estate subject to the occurrence or performance of all the terms and conditions of the contract. As shown above, Paragraph 5 specifically conditioned defendant's obligation on the availability of "all necessary licenses and permits * * * for the construction and operation on the premises of an automobile service station in accordance with Shell's plans and specifications."

Plaintiffs do not and cannot on this record claim that an access permit was ever obtained from the Minnesota Highway Department. Rather they advance the untenable proposition that the contract did not encompass the acquisition of such a permit.

From the very onset of the negotiations plaintiffs were acutely aware of the importance and necessity for defendant to procure an access permit onto Highway No. 210, and were fully cognizant that defendant considered this as a condition precedent to its obligation to purchase the property. Mr. Klein, one of the plaintiffs, had interviewed officials of the Minnesota Highway Department in regard to obtaining such a permit. Defendant's repeated efforts in this respect were likewise unsuccessful. After the option had been exercised the permit in question became the bone of contention. This is revealed beyond dispute by the exchange of correspondence between the parties. Considering the posture of the facts and circumstances as presented to the district court, plaintiffs were not entitled to unilaterally treat the transaction as consummated. Until the sale had been completed or defendant had become legally obligated to purchase the real estate, plaintiffs were not,

under any rational basis, entitled to maintain an action for the purchase price.

In summary, despite the ingenious effort of plaintiffs to label and characterize their claim as one for legal relief, the conclusion is inescapable that the remedy they sought was purely equitable in nature. They were faced with the necessity of having a court decree specific performance of the contract before they were entitled to a money judgment.

Plaintiffs have had their day in court, and have secured a fair and impartial adjudication of their rights. The judgment of the district court is fully supported by and is responsive to the evidence.

Affirmed.