**KERR–McGEE CORPORATION, a Delaware corporation, Appellee,**

v.

**BOKUM CORPORATION, a New Mexico corporation, Appellant.**

**No. 664–70 (7753).**

United States Court of Appeals, Tenth Circuit.

Jan. 21, 1972.

Harry L. Bigbee, Santa Fe, N. M. (Harl D. Byrd, Richard N. Carpenter, G. Stanley Crout and Paul D. Gerber, of Bigbee & Byrd, Santa Fe, N. M., were on the brief), for appellant.

John D. Robb, Albuquerque, N. M. (William C. Briggs, Mark K. Adams and William S. Dixon, of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., Willard P. Scott, Oklahoma City, Okl., and Henry S. Glascock, of Denny, Glascock & McKim, Gallup, N. M., were on the brief), for appellee.

Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

Kerr-McGee Corporation, as lessee under a uranium mining lease, brought this action for declaratory judgment requesting judicial interpretation of certain provisions of the lease. In response, the lessor, Bokum Corporation, filed an answer and counterclaim seeking possession of the property and claiming that it had terminated the lease for various alleged breaches by Kerr-McGee. The United States District Court for the District of New Mexico ruled against Kerr-McGee on part of its declaratory judgment contention and generally against Bokum on its counterclaim. Only Bokum appeals.

The lease that is the center of this controversy was executed in 1962. In dispute are the rights in approximately four sections of land covered by the lease and located in the Ambrosia Lake area near Grants, New Mexico in the largest uranium mining district in the United States. Kerr-McGee has been operating the properties since development began under the original lease entered into in 1956.[1]

Although the lessee interest has been shared with co-lessees from time to time, Kerr-McGee from the beginning has had controlling interest in the property, and is now the sole owner of the lessee's interest. The original owners of the property were the members of the Branson family, and the Bransons were the lessors in both the 1956 and 1962 leases. The appellant Bokum acquired the Branson's interest in 1968 and this dispute arose in the same year.

Prior to 1968 the only market for uranium was the federal government through the Atomic Energy Commission, and the AEC only purchased the milled uranium concentrate $U_3O_8$, known as "yellowcake"; it did not purchase ore. In 1968, however, a private market for raw ore developed through the sale to large utility companies. At the price the utilities were offering for ore, the royalty payments on the sale of raw ore

---

1. The original lessee under the 1956 lease was the Ambrosia Lake Uranium Corporation (ALUC), a corporation formed by Kerr-McGee and the lessors for purposes of developing the property. ALUC was controlled by Kerr-McGee. The lessees in the 1962 lease were Kermac Nuclear Fuels Corporation and Phillips Petroleum Company, with Kermac owning 80% of the lessee's interest. Kermac Nuclear Fuels Corporation was controlled at all times by Kerr-McGee and in December of 1962 Kermac was merged into Kerr-McGee. The parties have stipulated that for purposes of this appeal the name "Kerr-McGee" will refer to either Kermac or Kerr-McGee.

would be higher than the royalties on the sale of yellowcake produced from the same ore. When this situation arose, Bokum, the new lessor, contended that Kerr-McGee was required by express and implied covenants in the lease to dispose of the ore in the manner that would result in the highest royalties to the lessor —that it must sell the ore rather than process it through its mill. Kerr-McGee felt that the lease gave it complete discretion to dispose of the ore as it saw fit as long as it paid the royalties provided for in the lease.

A second disagreement over proper interpretation of the lease arose shortly after Bokum acquired the lessor's interest. The lease provided that "Lessee shall furnish quarterly statement unto Lessor reflecting any findings from drilling operations regarding ore bodies or ore reserves on the Leased Premises." Kerr-McGee had interpreted "findings" as used in the lease, to mean the factual data from which ore reserves may be computed, and it had been supplying such data to the lessor on a quarterly basis. Bokum, however, insisted that "findings" meant that Kerr-McGee was obligated to furnish its ore reserve estimates as well as raw data, and made a corresponding demand on Kerr-McGee. Additional challenges by the new lessor dealt with the sufficiency of royalty payments and the method of computing them.

Kerr-McGee filed its suit for declaratory judgment on September 27, 1968, asking the court to determine the meaning of the lease as to these disputes. Shortly thereafter, on October 15, 1968, Bokum notified Kerr-McGee by telegram that it was unilaterally canceling the lease for various alleged breaches of the lease. In this telegram Bokum raised for the first time claims of fraud, unminerlike mining and milling practices, and additional royalty breaches later included in the counterclaim. Bokum's answer and counterclaim was filed January 2, 1969.

Count I of the counterclaim sought ejectment under N.M.Stat.Ann. §§ 22–8–1 to 22–8–30 (1953). Bokum claimed a right to possession of the property for the reasons that: (1) The lease had been terminated and canceled for several specified breaches which included (a) failure to furnish ore reserve figures, (b) refusal to sell instead of process ore when higher royalties would result from selling, (c) improper calculation and payment of royalties, and (d) the use of improper and unminerlike mining and milling practices; (2) Bokum had declared the lease void and rescinded because its execution had been induced by Kerr-McGee's fraud; and (3) the term of the lease had expired for failure to produce the "fair share" of $U_3O_8$ in ore as required by the lease, and had expired as to Sections 31 and 35 of the subject lands due to failure to develop and mine. Damages for wrongful retention were also sought in Count I. Count II of the counterclaim sought an accounting for royalties allegedly underpaid by Kerr-McGee.

Bokum requested a jury trial on all matters raised in Count I of its counterclaim. The district court examined the lease and Count I of the counterclaim and denied the request for a jury trial on the grounds that Count I was not an ejectment action but an action in equity for cancellation. The court ruled that "inasmuch as the Plaintiff is in possession of the premises by virtue of a lease valid on its face and uncancelled, the basic thrust of the action which is phrased in ejectment is really one for cancellation." The court recognized that Bokum would be entitled to a jury trial on the question of damages for wrongful retention, and ruled that a jury trial as to damages would be held if the court ruled in Bokum's favor on the cancellation issue.

After a 44-day trial, the court announced its decision generally in favor of Kerr-McGee with certain exceptions. It ruled in Bokum's favor in deciding that Kerr-McGee must furnish ore reserve figures as well as the data used to arrive at them. Nevertheless, the court found that Kerr-McGee's breach on this issue was due to a "bona fide" misinter-

pretation of its duty under the lease. The court found three additional breaches by Kerr-McGee dealing with calculation and payment of royalties. The court found that these breaches were minor and not sufficient cause for cancellation of the lease. The court ruled against Bokum and in favor of Kerr-McGee on all other issues. It decided that the express terms of the lease gave Kerr-McGee the prerogative of selling the ore or processing it regardless of which alternative produced greater royalties. The court found that Kerr-McGee's mining and milling practices closely paralleled those of other companies prominent in the industry, and that they were proper and minerlike. Based on the above rulings and findings, the court held Bokum not entitled to cancellation. The court found no evidence to support Bokum's contention of fraud in execution of the lease and held that Bokum was not entitled to cancellation. It held that the "fair share" of ore had been mined and that the lease had thus not expired under its "fair share" requirements provision. It also held that the lease had not expired as to Sections 31 and 35 for failure to develop and mine. Bokum appeals all of these adverse rulings, including the denial of a jury trial.

## I.

The appellant's assertion that it was denied its right to a jury trial is entitled to primary consideration. The trial court's ruling on this issue affected the very nature of the case and the manner in which it was tried. Error in the trial court's ruling would require reversal and a retrial.

 The right to a trial by jury guaranteed by the seventh amendment extends only to those suits which would have been triable before a jury at common law. Thus, although the Federal Rules of Civil Procedure have abolished the distinction between law and equity, the courts must still refer to that ancient distinction to decide whether a case is entitled to a jury trial or should be assigned for a court trial. This decision, determining the right to a jury trial must be made according to federal law in diversity cases. Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691. Thus, the basic issue underlying the propriety of the court's denial of a jury trial is whether the counterclaim is, as Bokum characterizes it, a legal action in ejectment for possession of real property, or, as the trial court ruled, an equitable action for cancellation of the lease.

 It is true that the counterclaim was phrased in terms of an action in ejectment, but it is also true that the right to a jury trial is not determined by the form of the complaint, but by an appraisal of the claims, defenses, and remedies. It is the issues, not the form of the complaint, that will determine the method of trial. Bruce v. Bohanon, 10 Cir., 436 F.2d 733; Klein v. Shell Oil Co., 8 Cir., 386 F.2d 659; Barron & Holtzoff, Federal Practice & Procedure, § 873 at 33 (Wright ed. 1961). This principle was expressed by Mr. Justice Black, speaking for the Court in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477–478, 82 S.Ct. 894, 8 L.Ed.2d 44:

> The respondents' contention that this money claim is "purely equitable" is based primarily upon the fact that their complaint is cast in terms of an "accounting," rather than in terms of an action for "debt" or "damages." But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.

The trial court, therefore, was fully justified in looking beyond the allegations of the counterclaim to determine Bokum's right to a jury trial. A decision on this issue could only be made by examining the basic nature of the claims or issues presented and the type of relief sought. *See generally* 5 Moore's Federal Practice § 38.16, pp. 153–63 (2d ed. 1971).

 After examining the pleadings and the lease attached to the complaint, the trial court determined that the issues presented were equitable. In spite of

the defendant's claim that the lease had terminated, the court could find nothing in the lease giving Bokum the right to terminate. On the contrary, the lease appeared valid on its face. Since Kerr-McGee was in possession of the property under a valid lease, Bokum's assertion of a present right to possession would of necessity fail. A right to possession of the premises at the time of filing the complaint is essential to maintaining ejectment both at common law and, indeed, under the statutory law of New Mexico. N.M.Stat.Ann. §§ 22–8–1 and 22–8–7 (1953). Thus, on the basis of the pleadings and attached exhibits, the trial court was justified in its conclusion that Bokum was not entitled to maintain an action in ejectment. However, construing the pleadings liberally, the court chose to interpret it as a suit seeking cancellation of the lease, a claim in equity. The court noted, however, that the portion of the counterclaim requesting damages was a legal claim and would merit trial to a jury. The factual issues relating to the question of damages were not the same as those in the equity portion of the claim. The cancellation issue could therefore be tried first without affecting Bokum's right to jury trial on the legal claim. This result is in complete accord with Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44.

The ruling of the district court on this matter is entirely correct. Since Kerr-McGee was in possession under a valid lease, the remedy of ejectment was not available to Bokum. Bokum's counterclaim must survive only as a request for cancellation. The issues raised by the counterclaim were equitable and triable to the court with no right to trial by jury.

## II.

■ Inherent in affirming the lower court's decision on the jury trial issue is approval of its ruling regarding Bokum's claim to a right of unilateral termination of the lease. The trial court found no expression in the lease giving the lessor the right to terminate. Although the Supreme Court of New Mexico apparently has not spoken on this subject, the better view of the law seems to be that in absence of an express forfeiture provision in a lease, the lessor's remedy for breach of covenants, express or implied, is an action for damages or a suit in equity for cancellation. Thornton, Law of Oil and Gas, § 304 (1932). See also Craig v. Champlin Petroleum Co., 10 Cir., 421 F.2d 236; Wagoner Oil & Gas Co. v. Marlow, 137 Okl. 116, 278 P. 294.

■■ Bokum, in its search for an express right of termination turns to the force-majeure clause of the lease. The lease's force-majeure clause is a standard one, providing basically that a breach of any covenant of the lease which is due to conditions beyond the control of the lessee shall not be grounds for cancellation, termination or forfeiture. Bokum's construction of the force-majeure clause is strained, to say the least. It is clear that the lease does not contain an express provision for termination or forfeiture, and the force-majeure clause is, at best, ambiguous as to the right of the lessor to terminate for breach. If there is ambiguity in the forfeiture clause of a lease, it is construed against forfeiture. Knight v. Chicago Corp., 144 Tex. 98, 188 S.W.2d 564; Sirtex Oil Industries, Inc. v. Erigan, (Tex.) 403 S.W.2d 784; Thornton, Law of Oil and Gas § 263 (Cum.Supp.1960).

■ The trial court's findings as to the various alleged breaches of the lease by Kerr-McGee are factual determinations subject only to the "clearly erroneous" standard of review on appeal. Butler Paper Co. v. Business Forms, Ltd., 10 Cir., 424 F.2d 247; Fed.R.Civ.P. 52 (a). The court found that the lease required Kerr-McGee to furnish ore reserve figures as well as the raw data from which ore reserves are calculated, but the court determined that Kerr-McGee's contention in this regard was "bona fide" and did not entitle Bokum

to cancellation. The court found that royalties had been incorrectly paid and computed and that Kerr-McGee had failed to pay royalty on certain uranium-bearing material taken from Section 29. The court ruled, however, that these were minor items and were no basis for cancellation of the lease. In regard to Bokum's allegations of improper and unminerlike mining and milling practices in the Kerr-McGee operation, the court found that these claims were unsubstantiated and were without merit. The trial court's findings in these matters are supported by substantial evidence and thus are not clearly erroneous.[2]

■ ■ Bokum argues on appeal that the trial court's findings and conclusions concerning Bokum's "sell or process" contention are erroneous as a matter of law. Bokum contends that there is an implied covenant to market the ore at the highest price obtainable. Although such a covenant may be implied in particular mineral leases, it cannot be written into a lease in which the parties have contracted otherwise. The granting clause of the 1962 lease clearly gives Kerr-McGee the exclusive right to "own and dispose of all uranium-bearing ores or uranium-bearing materials and by-products." Then, for purposes of royalty calculation, the lease sets out several methods for determining ore value. The method used to determine ore value depended on the manner of disposing of the ore. There is no provision in the lease requiring that one method of calculating ore value be preferred over another. Under these circumstances, the conclusion is inescapable that the parties intended that the manner of disposing of the ore be within the sole discretion of Kerr-McGee. The judgment of the trial court in this regard is entirely correct.

### III.

■ Bokum's next contention is that the lease expired or should be canceled for Kerr-McGee's alleged failure to mine its "fair share" in ore and expired or should be canceled as to Sections 31 and 35 for failure to mine after 1966. At the execution of the 1962 lease Kerr-McGee and Phillips Petroleum were co-lessees under the lease; Kerr-McGee having an 80% interest in the material mined from the premises, and Phillips having the remaining 20% interest. United Nuclear Corporation subsequently purchased Phillips' interest and in 1965 an agreement was made between United Nuclear and Kerr-McGee whereby United Nuclear would take lessee's rights in Section 27 and Kerr-McGee would take lessee's rights in the remaining sections in lieu of their respective undivided interest in the whole. In 1969 United Nuclear purchased the lessor's interest in Section 27 from Bokum. Whether the "fair share" provision of the lease was complied with depends on whether ore produced from Section 27 should be included in total production from the leased premises. The trial court ruled that Section 27 ore should be included and found that the "fair share" had been mined from the leased premises. Bokum challenges this determination. It is unnecessary, however, for this court to reach the question of whether Section 27 ore should be included. The lease does not require that "fair share" be mined, it requires only that a good faith attempt be made to mine the "fair share" in ore. There is no evidence in the record before this court to indicate that Kerr-McGee made anything but a good faith attempt to mine the fair share. The trial court must therefore be affirmed on this issue.

■ ■ With regard to Sections 31 and 35, Bokum contends that the lease

2. The 44-day trial in this case resulted in a record in excess of 3800 pages largely concerned with the issue of whether Kerr-McGee mined the property as a prudent operator. The evidence on this issue was voluminous and conflicting and to detail it here would serve no precedental purpose. Indeed, to do so would extend a case which the trial court aptly described as " . . . a classic example of how a brush fire can escalate into a nuclear war. . . . "

terminated by express provision of the lease for failure to mine after 1966. A thorough examination of the lease, however, has failed to reveal any such provision. There is no provision in the lease that can be reasonably interpreted as providing for expiration of the lease as to portions not mined after 1966. The trial court interpreted Bokum's argument as seeking cancellation of the lease as to Sections 31 and 35 for breach of implied covenant to explore and develop. The court then ruled that the implied covenant was to explore and develop the properties as a reasonably prudent operator would do and that there was no breach of this implied covenant by Kerr-McGee. The district court's ruling on the nature of the implied covenant to explore and develop is correct. Libby v. De Baca, 51 N.M. 95, 179 P.2d 263; Sun Oil Co. v. Frantz, 10 Cir., 291 F.2d 52. Its finding as to whether Kerr-McGee acted as a reasonably prudent operator is a factual matter and is amply supported by substantial evidence.

■ Bokum's contention that the lease has expired for failure to mine fair share and for failure to develop and mine Sections 31 and 35 ignores the language of the habendum clause of the lease:

> This mining lease shall be and remain in full force and effect for as long as the Leased Premises are being mined or ore is being produced, processed or marketed from any part or portion thereof, or royalties are being paid hereunder . . . .

This clause clearly sets out the term of the lease, which is that the entire lease remains in effect "as long as . . . ore is being produced, processed or marketed from *any part or portion*" of the leased premises. The most reasonable interpretation of the habendum clause is that production from any section of the premises is sufficient to keep the lease in effect for all sections. It is undisputed that a great deal of ore has been mined and is being mined from Sections 29 and 33. It is likewise undisputed that royalties have been paid on the ore that has

been produced. This is sufficient to keep the lease in effect.

## IV.

■ The trial court's findings with respect to Bokum's fraud contention were that there were no false, fraudulent or deceitful representations made to the Bransons, that the Bransons were dealt with fairly, that the lease was made through fair arm's-length negotiations with both sides represented by competent counsel, that the Bransons were represented by a competent and qualified geologist who had full access to Kerr-McGee's records and information relative to the properties, and that there was no evidence supporting Bokum's contention of fraud and misrepresentation. Elaboration on the court's findings is unnecessary. A review of the record before this court indicates that the evidence amply supports the trial court's conclusions.

## V.

Finally, Bokum contends that under the trial court's decision it is now entitled to an accounting. The judgment of the trial court specifically denied an accounting relating to monies "by reason of any wrongful withholding" by Kerr-McGee based upon the rejection of Bokum's claim to a possessory interest in the subject lands. This portion of the trial court's judgment was correct as far as it pertained to Bokum's original claim as pleaded and contended for during trial. However the declaratory judgment entered set out specifically the correct method for the computation of royalties and held that Kerr-McGee, in good faith but erroneously, had underpaid the royalties due in several respects. In one respect the court found the amount to be $3,113.-24; in other aspects the judgment is silent as to amount.

In response to this contention of Bokum, Kerr-McGee seems to admit further liability but characterized the amount as either in substantial agreement as reflected in the evidence or subject to simple arithmetical computa-

tion. Such response rises no higher than to claim such matters to be uncomplicated.

Although to term this aspect of the case as a right to an "accounting" may be technically inaccurate, Bokum is entitled to have the case fully adjudicated and to the entry of a judgment reflecting its right to a specific amount for all monies recoverable under the court's decision. The case is remanded for further proceedings in such regard and in all other respects is

Affirmed. No costs are awarded.