John R. HILDEBRAND,
Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY, Clifton R. Whar-
ton, President, Michigan State Universi-
ty, John Edward Cantlon, Provost, Mich-
igan State University, Edward A. Carlin,
Dean of University College, Michigan
State University, Douglas Dunham, and
Clinton A. Synder, Defendants-Appel-
lees.

No. 77–1435.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1978.

Decided Aug. 16, 1979.

As Amended Sept. 17, 1979.

Kenneth Laing, Jr., MacLean, Seaman, Laing & Guilford, Lansing, Mich., for plaintiff-appellant.

Leland W. Carr, Jr., Anderson, Carr, Street & Hornbach, Lansing, Mich., for defendants-appellees.

Lynwood E. Beekman, Foster, Swift, Collins & Coey, Lansing, Mich., for amicus curiae.

Before WEICK and KEITH, Circuit Judges, and CECIL, Senior Circuit Judge.

KEITH, Circuit Judge.

In recent years, the genteel academic world has been rocked with controversies which have required adjudication by federal judges. This case presents an increasingly common dispute—a non-tenured professor whose employment is terminated, claims that his first amendment and due process rights were abridged. The issues presented in this appeal, however, do not directly implicate the merits of how and why the plaintiff was fired. Instead, plaintiff complains of certain evidentiary rulings and of the district court's denial of his right to trial by jury. We find merit in his contentions and reverse and remand for a new trial.

## FACTS

### Background

For a number of years prior to 1967, the plaintiff, Dr. John R. Hildebrand, was a full professor at Texas Technological University. He applied for a position on the faculty of Michigan State University and was accepted in April of 1967. Hildebrand began teaching courses in the Department of Social Science [1] at Michigan State in September of 1967.

At the time, Michigan State's social science program followed a standard format to which all professors were expected to conform. The plaintiff became dissatisfied with this mechanical approach since it left no room for variation by individual instructors. He voiced these and other concerns to his colleagues, some of those criticisms were contained in a report entitled *Improving Undergraduate Education*. He also successfully sought election to a position on the Departmental Advisory Committee. In early June of 1968, shortly after his successful election, the plaintiff met with Douglas Dunham, Chairman of the Department of Social Sciences. The two discussed Dr. Hildebrand's future in what appeared to be a frank and cordial fashion.

Approximately one month later, during the summer recess, Dr. Dunham met with a number of the department's full professors. They discussed Dr. Hildebrand's upcoming reappointment and voted unanimously not to recommend him for reappointment. On September 12, 1968, Dr. Dunham informed the plaintiff by letter that he would not be reappointed. By this time, the plaintiff had returned from the summer recess. Dr. Hildebrand commenced a series of intra-University appeals, but to no avail. He then filed two unsuccessful unfair labor practice charges with the Michigan Employment Relations Commission. The Michigan State courts denied leave to appeal and the plaintiff turned to federal court. Dr. Hilde-

---

1. He also had a joint appointment as an associate professor in the Latin American Studies Center.

brand's employment with Michigan State terminated on August 31, 1969.

## Federal Proceedings

Suit was filed on October 12, 1971, against the defendants—The Board of Trustees of Michigan State and various University employees. Plaintiff alleged that his termination was in retaliation for the exercise of his first amendment rights and that the University procedures which were followed contravened the due process clause of the 14th Amendment. The cause of action was based on 42 U.S.C. §§ 1983 and 1985. Plaintiff prayed for reinstatement, back pay and compensatory and punitive damages.

Both plaintiff and defendant made timely requests for a jury trial. The jury trial issue was not raised at all throughout pre-trial proceedings, including a motion to dismiss, motion for a preliminary injunction and motion for summary judgment. At the final pre-trial conference on August 16, 1974, everyone assumed that the case would be tried by a jury and the pre-trial statements so indicated. The case went to trial before a jury for approximately five days. Both sides presented their evidence; neither side moved for a directed verdict at any point. After both sides rested but before the jury was instructed, the district court, on its own motion, questioned whether a jury was appropriate.

After considering the issue, the court concluded that the case sounded in equity and that the case would not be submitted for a jury verdict after all. Instead, the court decided that it would treat the jury as advisory under F.R.Civ.Pro. 39(c) and have it answer certain interrogatories to help out with the final decision. And so it happened: The jury answered four interrogatories; both sides submitted proposed findings of fact and conclusions of law; and the case was submitted to the district court for decision. Over two years later, on March 18, 1977, the court issued an extensive opinion finding in favor of the defendants on all counts and dismissing the complaint. The plaintiff appeals.

## I

The plaintiff contends that the district judge erred in taking the case over from the jury and deciding it himself. We agree. The Seventh Amendment guarantees that a trial by jury be had in all federal cases presenting "legal" claims over $20.00. Before 1938, this presented little problem since cases at law were separate from cases in equity. In 1938, everything changed; law and equity were merged. The merger of law and equity is universally acknowledged to be a good thing, but it has created problems in the jury trial area since one is entitled to a jury trial on legal claims, but not equitable ones. Some clarity was brought to this area by *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), which command that where a case presents both legal and equitable issues, jury trial rights must be preserved.

The question remains, what is a "legal" issue? Guidance is provided by *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 fn. 10, 24 L.Ed.2d 729 (1970), where the Court stated:

As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries.

The first part of the test created confusion. Some courts took the view that no jury trial right attached to purely statutory causes of action which had no direct common-law counterpart. *See McCraw v. United Ass'n of Journeymen,* 341 F.2d 705, 709 (6th Cir. 1965); *Lawton v. Nightingale,* 345 F.Supp. 683 (N.D.Ohio 1972); *Buss v. Douglas,* 59 F.R.D. 334 (D.Neb.1973). Whatever merit there might have been to this expansive notion, it was quickly deflated by *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). There, the Court ruled that a jury trial was available in a housing discrimination suit under Title VIII of the Civil Rights Act where the plaintiff sought

actual and punitive damages. *Curtis v. Loether* shifts the focus to the second issue: the nature of the relief sought.

A key dividing line between law and equity has historically been that the former deals with money damages and the latter with injunctive relief. This distinction has been blurred by court decisions indicating that not all money damages claims will be deemed "legal." *See Curtis v. Loether, supra* at 196, 94 S.Ct. 1005; *McFerren v. County Board of Ed. of Fayette Co., Tenn.*, 455 F.2d 199, 202–04 (6th Cir. 1972); *Local No. 92, Int'l Ass'n of Bridge, S. & O. Workers v. Norris*, 383 F.2d 735, 740–42 (5th Cir. 1967). *See also Georgia Power Co. v. 138.30 Acres of Land*, 596 F.2d 644 (5th Cir. 1979). A common example is an employment discrimination claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* which seeks injunctive relief (i. e. reinstatement) and back pay. Although the Supreme Court has never directly addressed this question,[2] the courts of appeals have uniformly held that no jury trial right exists. *See Slack v. Havens*, 522 F.2d 1091, 1094 (9th Cir. 1975); *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 308 (6th Cir. 1975), *vacated and remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *King v. Laborers Int. Union*, 443 F.2d 273, 279 (6th Cir. 1971) (dicta); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969).

The rationale for this view is that a back pay award is a discretionary, "make whole" remedy which is incidental to injunctive relief. *See Lorillard v. Pons*, 434 U.S. 575, 582, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1978); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 441–444 (Rehnquist, J., concurring); *Slack v. Havens, supra* at 1094; *EEOC v. Detroit Edison Co., supra* at 308; *Johnson v. Georgia Highway Express, Inc., supra* at 1125. In contrast a claim for actual and/or punitive damages is viewed as purely "legal." *See Curtis v. Loether, supra* at 195–96, 94 S.Ct. 1005; *EEOC v. Detroit Edison, supra* at 308–11. *See also United States v. Snepp*, 595 F.2d 926, 935–38 (4th Cir. 1979), petition for cert. filed June 18, 1979, 47 U.S.L.W. 3826.

The third issue to be examined is whether a case is too complex for the jury to understand. No Supreme Court opinion has ever found such a case, although there is increasing lower court authority concerning it.[3] This factor is inapplicable here in any event since the district court specifically stated that this case was not beyond the capability of a jury.

The above-cited authorities mandate that the chief focus to be made when determining whether a jury trial right exists is the nature of the relief sought. If the remedy sought is injunctive relief and/or back pay, no jury trial right attaches. In the ordinary case, if the relief sought includes compensatory and/or punitive damages, then there does exist a right to trial by jury. *See National Union Electric Corp. v. Wilson*, 434 F.2d 986 (6th Cir. 1970).[4]

## II

In this case, the plaintiff sought actual and punitive damages in addition to reinstatement and back pay. There is direct authority that such claims entitle one to a

---

2. The Court has continued to leave the issue open. *See Lorillard v. Pons*, 434 U.S. 575, 583–84, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Curtis v. Loether*, 415 U.S. 189, 196–97, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

3. *See Hyde Properties v. McCoy*, 507 F.2d 301, 306 (6th Cir. 1974) (accounting); *ILC Peripherals v. IBM*, 458 F.Supp. 423, 444–49 (N.D.Cal. 1978) (anti-trust case). *See generally*, Note, *The Right to a Jury Trial in Complex Civil Litigation*, 92 Harv.L.Rev. 898 (1979).

4. We need not rule here about the continued vitality of our decision in *McGraw v. United Ass'n of Journeymen & App. of Plumbing*, 341 F.2d 705, 709–10 (6th Cir. 1965). *See Int'l Bhd. of Boilermakers v. Braswell*, 388 F.2d 193 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968); *Simmons v. Avisco, Local 713, Textile Workers Union*, 350 F.2d 1012 (4th Cir. 1965); *Paley v. Greenberg*, 318 F.Supp. 1366 (S.D.N.Y.1970).

jury trial in a first-amendment retaliatory discharge case. *Burt v. Board of Trustees of Edgefield City School District,* 521 F.2d 1201 (4th Cir. 1975); *Amburgery v. Cassady,* 507 F.2d 728 (6th Cir. 1974). Subsequent suits similar to this one have been tried to a jury. *See Cooper v. Johnson,* 590 F.2d 559 (4th Cir. 1979) (J.N.O.V. entered) (2–1 decision); *Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir. 1979); *Wagle v. Murray,* 546 F.2d 1329 (9th Cir. 1976), *vacated and remanded,* 431 U.S. 935, 97 S.Ct. 2645, 53 L.Ed.2d 252 (1977), *on remand,* 560 F.2d 401 (9th Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978); *Norbeck v. Davenport Community School District,* 545 F.2d 63 (8th Cir. 1976); *Bertot v. School District No. 1,* 522 F.2d 1171 (10th Cir. 1975) (J.N.O.V. entered on appeal). These authorities mandate a jury trial in cases such as this.

### A.

At the time it removed the case from the jury, the district court did not have the benefit of *Burt, supra,* or our decision in *Amburgery, supra.* In its subsequent opinion the district court attempted to distinguish these decisions. We are unable to do so.

The court stated that in order to be entitled to a jury trial, a party must sustain its burden of coming forward with the evidence as to the legal issues in the case. The court went on to analyze the plaintiff's claim for compensatory damages for mental anguish and for punitive damages and found them insubstantial. The court pointed to *Lynch v. Pan American World Airways,* 475 F.2d 764, 765 (5th Cir. 1973), where the Fifth Circuit stated that "unsupported allegations for compensatory and punitive damages" under 42 U.S.C. § 1981 could not "unilaterally alter the genre" of an essentially equitable employment discrimination proceeding.

We will assume that the district court correctly determined that the damages counts were insubstantial.[5] Plaintiff urges that this makes no difference and that *Lynch* cannot survive *Curtis v. Loether.* We disagree. A plaintiff already has considerable power to determine whether there will be a jury trial since he can decide whether to add actual or punitive damages counts to his complaint. This right should not extend to a case where the actual or punitive damages counts are frivolous or clearly not meritorious. The question then becomes, at what point must this determination be made?

There is surprisingly little authority on when a jury trial determination need be made. The Supreme Court expressly left the question open in *Curtis v. Loether, supra,* 415 U.S. at 196 n. 11, 94 S.Ct. 1005. Judge Stevens' opinion in *Rogers v. Loether,* 467 F.2d 1110, 1118–19 (7th Cir. 1972), *aff'd sub nom. Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260, (1974) stated that a jury demand should be decided on the allegations and relief sought in the plaintiff's complaint. *See also Canister v. Leahy,* 182 F.2d 510, 513 (3rd Cir. 1950), *cert. denied,* 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951); *Ring v. Spina,* 166 F.2d 546, 549 (2d Cir.) *cert. denied,* 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368 (1948).

We think that this view is too strict. Under the liberal pleading allowances of the Federal Rules of Civil Procedure, allegations made in pleadings must be broadly construed. A complaint cannot be dismissed unless a plaintiff could advance no set of facts which would entitle him to relief. *See Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When examining a complaint, one must look solely at the allegations made and assume that they are true. If a judge considers affidavits or other materials, a mo-

---

5. Defendants argue that actual and punitive damages as well as backpay were unavailable because of sovereign immunity. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See Sheham v. Bd. of Trustees of Bloomsburg State Coll.,* 590 F.2d 470, 485–94 (3d Cir. 1978); *Goss v. San Jacinto Jr. College,* 588 F.2d 96, 98–99 (5th Cir. 1978); *Soni v. Bd. of Trustees of Univ. of Tenn.,* 513 F.2d 347, 351–53 (6th Cir. 1975). It is unnecessary for us to address this issue now.

tion to dismiss a complaint is converted into a motion for summary judgment. F.R.Civ. Pro. 12(c). If a trial judge could look only at the pleadings, then too many meritless damages claims could be made on which to base jury demands.

■ We think that the pre-trial standard contained in F.R.Civ.Pro. 56 is preferable. If it becomes clear prior to trial that no genuine issue exists as to any material facts, a district court can grant summary judgment as to some or all issues. This standard can operate to eliminate meritless damages requests and thus moot a jury demand.[6] Under this standard, the district court is free to examine all of the record and not just the pleadings. If a demand for damages is so insubstantial that it cannot meet the standard contained in Rule 56, then it should not be allowed to convert equitable issues into legal ones.

Our view is in accord with that of several courts which have emphasized that only an overall look at the issues presented and claims made will determine whether they are essentially legal or essentially equitable. *See Kerr-McGee Corporation v. Bokum Corporation,* 453 F.2d 1067, 1071–72 (10th Cir. 1972) (Court examined pleadings and attached exhibits to determine that no right to trial by jury existed); *Klein v. Shell Oil Co.,* 386 F.2d 659 (8th Cir. 1967) (Court examined underlying contract and held that the issue presented was equitable. The court concluded that "[t]he question at hand must be resolved not merely by the form of the complaint but by an appraisal of the basic nature of the claims or issues presented, and the type of relief sought") *Cf. King v. United Benefit Fire Ins. Co.,* 377 F.2d 728, 731 (10th Cir. 1967) (pre-trial conference an "opportune time" to consider a jury demand.) *See also Ross v. Bernhard, supra,* 396 U.S. at 538, 90 S.Ct. at 738 ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."); *Dairy*

*Queen Inc. v. Wood, supra,* 369 U.S. at 478, 82 S.Ct. at 900 ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings"). *See generally* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2304 (1971).

In this case, however, the district court let the case be tried before a jury and then withdrew it from them. His conclusion that the damages claims were frivolous was based on the testimony at trial. In effect, the district court held that if damages claims cannot survive a motion for directed verdict, then it is proper to abort a jury trial and convert the proceedings into a bench trial.

We think that considerations of fundamental fairness and judicial economy militate against this view. Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as opposed to a judge. To convert a trial from a jury trial to a bench trial (or vice-versa) in the middle of the proceedings is to interfere with counsel's presentation of their case and, quite possibly, to prejudice one side or the other. Further, it is a waste of the additional time and money which is inherent to a jury trial. *Cf. Simko v. C&C Marine Maintenance Co.,* 594 F.2d 960, 965–66 (3d Cir. 1979). *But see Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165, 172–73 (2d Cir. 1973).

**B.**

■ Even if we were to adopt the district court's view, we would have to reverse. In this case *both* sides requested a jury trial. Neither side ever moved to strike the jury demands. Indeed, neither side ever moved for a directed verdict. Since both parties apparently wanted the jury to decide this case and since the jury had heard both sides' presentation, the district judge's conduct in *sua sponte* taking the case away

---

6. We do not formalistically require that actual summary judgment be entered as to damages counts before trial so long as the district judge makes it clear to the parties that no jury trial

will be had because the money damages claims were not meritorious when tested against F.R. Civ.Pro. 56 standards.

from the jury is particularly difficult to understand.

Even if the court was correct that no jury trial right existed in this case, F.R.Civ.Pro. Rule 39(c)[7] permits both sides to stipulate to a jury trial. To be sure, a district court does not have to go along with the stipulation, but once that occurs, it does not have unbridled discretion to change its mind. In *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150 (10th Cir. 1965), the district court approved a jury trial stipulation, but on the eve of trial, vacated the stipulation on its own motion on the ground that the parties had no right to a jury. The Court of Appeals found an abuse of discretion. Assuming that the district court in this case had the authority to abort the jury's decision-making role, we would find an abuse of discretion in the exercise of that authority.

### III

One final issue requires examination—the effect of the use of the jury in an advisory role. We do not have a situation here where the entire case was submitted to the jury for an advisory verdict. Despite counsel's requests that the whole case be submitted, the district court submitted only four interrogatories for the jury to answer. These interrogatories, set forth in the margin,[8] indicate that the jury concluded that no due process violation took place, but that the plaintiff should have been reinstated to his position at Michigan State. Presumably, the basis for the jury's conclusion was that the plaintiff's firing was done in retaliation for the exercise of his first amendment rights. Plaintiff urges that we enter judgment on this verdict and remand solely for a determination of damages.

Defendants, on the other hand, suggested at oral argument that we treat the jury trial matter as harmless error and that we affirm the district court's findings of fact and conclusions of law. They point to dicta in the district court's opinion where it states

7. F.R.Civ.Pro. 39(c) provides:
"In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, *the court with the consent of both parties may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.*" (emphasis added)

8. Interrogatory No. 1
Should plaintiff, John R. Hildebrand be reinstated to the staff at Michigan State University.
(Yes—No)_____Yes__
Signed ____/s/ Dennis A. Merizon__
Interrogatory No. 2
The Social Science, University College, Departmental By-Laws, and appendix thereto (November 3, 1967) provides in pertinent part as follows (page 12):
    IV.  Staff Evaluation
The staff evaluation practices currently in operation are as follows:

    .    .    .    .    .

(2) *At the time of reappointment*
(a) Department chairmen confers with advisory committee and/or tenured staff.
(b) The Dean and each non-tenured faculty member will confer at least once every two years. Department chairman will confer with non-tenured faculty at least once a year regarding the faculty members professional standing and prospects.
(c) Recommends to the Dean.
Was there compliance with the above stated procedures with reference to plaintiff, John R. Hildebrand?
(Yes—No)_____Yes__
Signed ____/s/ Dennis A. Merizon__
                    Foreperson
Interrogatory No. 3
Was plaintiff John R. Hildebrand entitled to reappointment at the conclusion of his two year probationary appointment?
(Yes—No)_____Yes__
Signed ____/s/ Dennis A. Merizon__
Interrogatory No. 4
Did any of the defendants knowingly deprive plaintiff, John R. Hildebrand of reappointment at Michigan State University or knowingly deny him the type of hearing which he would otherwise be entitled to because of plaintiff's candidacy for Departmental Advisory Committee?
(Yes—No)_____No__
Signed ____/s/ Dennis A. Merizon__
                    Foreperson
If the answer to the question is "yes", then insert the name or names of the persons you have determined to have done so.

    .    .    .    .    .

    .    .    .    .    .

    .    .    .    .    .

that the proof was such that it would have granted a directed verdict in any event.[9]

This case presents a procedural nightmare worthy of inclusion in a first year of law school civil procedure examination authored by the most cunning of professors. The district court erroneously withdrew the case from the jury, but allowed it to answer certain interrogatories in an advisory capacity. The court then entered findings of fact and conclusions of law, but stated that a directed verdict would have been granted in any event.

We do not think that we can enter judgment on the interrogatories. After deciding to take the case away from the jury, the district judge told both the jury and counsel that the jury's role would be solely advisory.[10] The entire case was not submitted to the jury for a general verdict. Nor can we ignore the district judge's statement that the evidence was such that a directed verdict would have been in order. At the very least it appears that the district court would have granted a Motion for New Trial had the case been in that procedural posture. In addition, the jury was not—could not have been—instructed in accord with the standards which the Supreme Court subsequently set forth in *Mt. Healthy School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

At the same time, we cannot sustain the district court's findings of fact and conclusions of law as a directed verdict. Neither side briefed or argued this issue in this court or in the court below and the district court's opinion was not written as a directed verdict. Neither side ever moved for a directed verdict and the district court never suggested prior to issuing its opinion that such a verdict was being considered. A motion for directed verdict is ordinarily a prerequisite to the filing of a motion for judgment notwithstanding the verdict.[11] In this case, both sides were apparently willing to let the jury decide the outcome since neither moved for a directed verdict, thus waiving their right to request J.N.O.V. Although some cases have indicated that a district judge has independent authority to direct a verdict,[12] the judge in this case never purported to do so. Under these circumstances, we would have difficulty treating the district court's opinion as one granting a directed verdict.

Moreover, the district court, in finding against plaintiff's claim that he was denied tenure because he exercised his first amendment rights, relied heavily upon the fact that the plaintiff spoke in private to his co-workers and not in public.[13] The distinc-

---

9. The district court stated, in relevant part: " . . . this Court's examination of the evidence leads to the rather inescapable conclusion that a directed verdict would have been justified here at the close of the evidence. . . . Considering the strong evidence already surveyed at some length, this [directed verdict standard] certainly appears to have been met. Indeed, a successful directed verdict at the close of plaintiff's case also seems a distinct possibility." App. at 235.

10. The issue of whether an advisory jury verdict could ever be treated as a "regular" jury verdict is unsettled. Dicta in *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 655 n. 24, 58 L.Ed.2d 552 (1979), indicates that it could not be. (" . . . an advisory jury . . . would not in any event have been a Seventh Amendment jury.")

11. *See Warner v. Kewanee Machinery and Conveyar Co.,* 411 F.2d 1060, 1063 (6th Cir.), *cert. denied,* 398 U.S. 906, 90 S.Ct. 1685, 26 L.Ed.2d 65 (1969); *Southeastern Greyhound*

Lines v. McCofferty, 169 F.2d 1, 3 (6th Cir.), cert. denied, 335 U.S. 861, 69 S.Ct. 136, 93 L.Ed. 407 (1948).

12. *See Best v. District of Columbia,* 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882 (1934); *Peterson v. Peterson,* 400 F.2d 336 (8th Cir. 1968). *Cf. Moran v. Raymond Corp.,* 484 F.2d 1008, 1010 (7th Cir. 1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974) (general motion for a directed verdict could be supplemented by counsel's argument).

13. The district court stated in relevant part: Indeed, at least with respect to the statements alleged to have been the basis for nonrenewal [of tenure], the Court harbors doubts as to whether they are protected by the first amendment at all. In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court sought to strike a balance between a teacher's first amendment freedom of expression and a school district's legitimate interest

tion which the district court drew between private and public speech cannot survive *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).[14] Especially given this intervening clarification in the law, we cannot affirm the district court under directed verdict standards.

## IV

The only fair solution to this tangled and protracted case is to reverse and remand for a prompt jury trial on all issues.[15] We are aware of the Western District of Michigan's glutted docket, but we see no other solution here. On these facts especially with both sides requesting a jury trial, Dr. Hildebrand was entitled to have a jury decide the issues.

Reversed and remanded for a prompt trial by jury.[16]

WEICK, Circuit Judge, concurring:

I concur in the result.

in the efficiency of its endeavors. In the process, the Court, through its examination of the teachers' statements, attempted to "indicate some of the general lines along which an analysis of the controlling interests should run." 391 U.S. at 569, 88 S.Ct. at 1735. Although the record in this area is not fully developed, it appears that Dr. Hildebrand's statements differ from those in *Pickering* in a number of significant aspects.

In *Pickering* the plaintiff took issue with the School Board's allocation of funds, stating his opinions in a letter to the editor of the local newspaper. Here, many of Dr. Hildebrand's statements disagreeing with the department's methods appear to have been made in private conversations with colleagues.

In addition, the statements in *Pickering* were directed against the teacher's ultimate employer and did not involve persons with "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." 391 U.S. at 570, 88 S.Ct. at 1735. In this case, however, the content of plaintiff's expressions runs to a much greater extent towards his direct superiors and immediate colleagues, further attenuating the force of first amendment protections here.

**14.** The district court, of course, did not have the benefit of the *Givhan* case at the time it wrote its opinion.

This case involves legal as well as equitable claims. The legal claim is for compensatory and punitive damages charging a conspiracy and violations of the constitutional rights of plaintiff, an untenured teacher at Michigan State University, arising out of the failure of the University to reappoint plaintiff at the expiration of his term of employment so that he could obtain tenure. The equitable claim is for reinstatement with back pay under 42 U.S.C. § 1983.

Under federal law, the legal claim must be tried first before a jury and the equitable claim resolved subsequently in the light of the determination of the legal claim by the jury. *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Wright's Federal Practice and Procedure § 2305; 5 Moore's Federal Practice and Procedure, para. 38.13 at p. 144. See also *Curtis v. Loether,* 415 U.S. 189, 98 S.Ct. 866, 55 L.Ed.2d 40 (1974).

**15.** Plaintiff also complains about two evidentiary rulings made by the district court. The court refused to admit a letter from defendant-professor Douglas Dunham to Dr. Vincent Lombardi, a supporter of the plaintiff. On remand, we think that the letter should be admitted at trial as relevant to the issues at hand under the liberal standard of F.R.E. 401.

The court also declined to admit a tape made of a meeting of the defendant Board of Trustees which contained reference to denial of due process. The tape contains random remarks by the Board members and does not reflect official action by the Board itself. On remand, the district court should consider admitting the tape subject to a limiting instruction. *See Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

**16.** Nothing in this opinion should be construed as precluding the entry of a directed verdict or J.N.O.V. as to some or all issues on retrial. Given the length of time that this case has been pending, however, we recommend that any motion for directed verdict be held in abeyance until after the jury renders its verdict. Similarly, we recommend that trial of this case be expedited, although we impose no time requirements.

Whether or not the issues in the legal claim are to be submitted to the jury for determination will necessarily depend on the sufficiency of the evidence which must be determined by the court applying the applicable rules if a motion is made for a directed verdict. I express no views on the sufficiency of the evidence as it is not properly before us. No motion for a directed verdict was made at the trial of this case and the court did not direct a verdict.