**BANCROFT v. TAYLOR.**

No. 8406.

Circuit Court of Appeals, Fifth Circuit.

July 27, 1937.

Rehearing Denied Sept. 10, 1937.

580

Carl T. Hoffman and L. L. Robinson, both of Miami, Fla., and Kit Williams, of Washington, D. C., for appellant.

W. H. Burwell, Marion E. Sibley, E. B. Kurtz, and W. L. Reed, all of Miami, Fla., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

When this cause was here before it was on an appeal from an order sustaining the motions to dismiss plaintiff's bill for want of equity, and transferring the cause to be heard at law. We decided that there was equity in the bill and, reversing the trial judge's order, we directed that the cause be reinstated on the equity docket; that the motions to dismiss be overruled; and that the cause stand for trial on its merits. What the case was, as plaintiff's bill made it out, is carefully and fully set out in our opinion on that appeal.[1] Only the briefest summary will be here attempted.

Plaintiff below, appellee here, is the state court receiver of the City Trust Company, appointed on the bill of one Will Allen, claiming to be a creditor of the trust company and of others named as defendants, to liquidate its assets, pay its debts, and wind up its affairs. Appellant is the receiver of the insolvent City National Bank, appointed by the Comptroller of the Currency to liquidate the Bank's affairs.

The suit was brought by bill of complaint filed in a Florida state court on June 17, 1933, and was by the national bank receiver removed to the federal court. As brought, it was to recover as trust funds in defendant's hands, assets of the City Trust Company alleged to have been transferred and surrendered to him in payment for 880 shares of stock in the trust company the bank owned. The claim was that by a pretended bona fide, but in reality a fictitious, sale of the trust company's stock for cash the national bank receiver had effected an exchange of its assets for the stock, thereby rendering it insolvent, and that he held and holds the proceeds of those assets in the amount of $176,000 with interest from the conversion, in trust for the creditors of the trust company.

The defenses were (a) that the receiver made a genuine, bona fide sale of stock for cash, and that he had no part in the acts of his purchasers in liquidating the company and distributing its assets through stock dividends; and (b) that, if he did have a part in that liquidation, and did receive part of the assets of the company in payment for the stock, no liability arose on account thereof to plaintiff, for the trust company was solvent when, and remained solvent after, the distribution occurred.

The trial on the merits developed a mass of testimony not without conflict, as to what led up to and what occurred in connection with the stock deal. There was no testimony showing, or tending to show, that at the time of the distribution the company was insolvent; that is, owed debts in excess of its assets. On the contrary, its statements as of that date showed it to be completely solvent, both before and after the distribution; that is, to have more than enough assets to pay its admitted or established debts.

The District Judge found that the defendant, as charged by plaintiff, had in form effected a sale of the stock for cash, but in substance had, in concert with his confederates in the deal, effected a conversion of the assets of the company to the extent of the value fixed on the stock, $176,000. He found, too, that this rendered the company insolvent, that the assets received for the stock were sufficiently traced into, and were still in, the hands of defendant, and that plaintiff should have judgment for the value of the assets thus taken, but without interest. The national bank receiver appeals from the decree, the state receiver cross-assigns because not allowed interest.

Appellant here, insisting that the decree was wrongly entered, complains of the findings as without evidence to support them, and of the decree as in accordance neither with the law nor the facts. He complains particularly of the finding that the payment to the national bank receiver rendered the trust company insolvent, and of the decree requiring the cancellation of the stock sale, with the surrender of its proceeds and the taking back of the stock. He insists further that if Spurway, his predecessor as receiver, did take assets as

---

[1] Taylor v. Spurway, 72 F.(2d) 97.

a liquidating dividend on his stock, there was no wrong in his doing so, of which appellant could complain, unless its taking rendered the trust company insolvent, and that there is no evidence that this was the effect of the transaction.

There is further insistence that plaintiff's proof fails to trace into the assets in appellant's hands sufficiently to charge them with a trust, the moneys received in payment for the stock. We agree with appellee that the evidence adequately supports the court's finding that, whatever the form, the effect of the transaction was that the national bank receiver was paid for his stock by a liquidating dividend. We agree with appellee, too, that no difficulty presents itself in the matter of tracing, for, if there was a wrong done, it was the wrong of the trust estate being administered for the benefit of the Bank's creditors, acting through the receiver, and the trust estate would be liable directly for the sums thus wrongly obtained. The case is not one of tracing into a receiver's hands moneys wrongfully obtained by the company in receivership. It is one of holding the receivership and its beneficiaries responsible for their own wrongs.

We agree with appellant, though, that there is no warrant in the evidence for the finding that the receipt of the liquidating dividend rendered the company insolvent, and that there is therefore none in law, on the record we have, for the decree complained of. According to every calculation and showing the assets of the trust company were considerably in excess of its liabilities when the transaction in question occurred. According to every calculation and showing it was solvent then. By the clear preponderance of the evidence it is solvent now, unless the uncertain, unliquidated, and unadjudicated claim of Allen is taken into account.

██ Nothing in the general law, nothing in the law of Florida, prevents a solvent company from distributing its assets to its stockholders. American Employers Ins. Co. v. Franklin Savings & Loan Co. (C. C.A.) 89 F.(2d) 224; McDonald v. Williams, 174 U.S. 397, 19 S.Ct. 743, 43 L.Ed. 1022. The rule is different when there are debts. Then a contract arises with the creditors that the capital stock shall not be withdrawn until their demands are satisfied. Sanger v. Upton, 91 U.S. 56, 23 L. Ed. 220.

██ If plaintiff Allen, without a judgment or other approval of his claim, were suing by creditors' bill or otherwise, to set aside the conveyance as fraudulent, he could not maintain this suit, for he would have to, and he does not, show that he is a creditor within the meaning of the law, entitled to be paid. With his claim unliquidated and unadjudicated as it is, Allen would be without standing to set the conveyance aside as fraudulent. 2 R.C.L. § 24; 12 R.C.L. § 134; § 137, note 8. In our opinion, he may not any more do this through a receiver appointed at his suit.

Here are two estates, the estate of a national bank, represented by its receiver, the estate of a trust company, represented by its receiver. If the trust company was made insolvent when the receiver of the national bank took its assets as a liquidating dividend, in payment of his stock, it may not be doubted that the receiver of the trust company should have the assets back, at least to the extent necessary to satisfy the trust company's creditors. On the other hand, we think it may equally not be doubted, that, in the absence of a showing of insolvency, the transaction would be unimpeachable. Further, it may not be doubted, we think, that, even if the company was rendered insolvent at the time, as a result of the transaction, but is solvent now, that is, its assets or its earnings in the state receiver's hands have increased in value since the transaction, so as to be sufficient to pay all its debts, leaving none unpaid, the mere fact that there was a wrongful distribution of assets would not justify a court of equity in ordering the national bank receiver to turn the assets over to the state receiver, merely to have that receiver turn them back to the national bank receiver. Equity acts not by circuity, but directly, and it will not concern itself with abstract wrongs. It will leave the assets in the hands of those really entitled to them. As the proof stands on the record before us, the trust company, after the complaint of the distribution was made, had assets available sufficient to discharge every acknowledged or established debt. As it stands, if Allen's claim be not taken into account, the receiver of the trust company has now on hand assets sufficient to discharge them.

There is no basis, therefore, in the record for a finding that the complained of distribution rendered the trust company insolvent, and there will be none, unless and

582

until Allen's unliquidated, uncertain, and greatly contingent claim[2] is established in the state court, where it is pending, as having existed as a debt when the complained of transfer of assets occurred, or unless additional evidence of the effect of that transfer upon the company's solvency is offered.

Unless and until then the Allen claim is established, or there is further proof of the effect of the complained of transfer, there is, and there will be, no basis or warrant for a decree directing the national bank receiver to pay moneys belonging to his trust, to the state receiver.

Finally, as the suit deals with real equities, if Allen's claim should be established for any sum, and it should be thereupon determined that the trust company was rendered insolvent by the distribution, and is to any extent insolvent now, there should not be a decree for the whole sum distributed by the dividend, but only for the amount of it by which it was made insolvent, and which is needed to pay off any of its unpaid creditors.

The decree is therefore reversed and the cause is remanded, with directions to stay further distribution by the national bank receiver, and further proceedings in this cause, for a reasonable time while the state court receiver is proceeding with despatch to have the Allen claim liquidated, and adjudicated, and for further proceedings thereafter in accordance herewith. The stay of liquidation as to the national bank will be vacated, and this suit dismissed without prejudice, should there be default in reducing Allen's claim to judgment with despatch, or thereafter in diligently prosecuting this cause.

Reversed and remanded, with directions.

W. H. Burwell, Marion E. Sibley, E. B. Kurtz, and W. L. Reed, all of Miami, Fla., for cross-appellant.

Carl T. Hoffman and L. L. Robinson, both of Miami, Fla., and Kit Williams, of Washington, D. C., for cross-appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

---

[2] As he first brought his suit, he made no claim at all against the trust company, but merely charged it with having papers in its possession.

