Anita A. **BEESLEY**, Plaintiff,

v.

The **HARTFORD FIRE INSURANCE COMPANY**, etc., et al., Defendants.

Civ. A. No. 89–AR–1062–S.

United States District Court,
N.D. Alabama, S.D.

Oct. 18, 1989.

As Amended Oct. 19, 1989.

---

**6.** Friendly, *Is Innocence Irrelevant? Collateral* *Attack on Criminal Judgments,* 38 U.Chi.L.Rev.

Robert Moore Weaver, John Lee Quinn, Longshore, Nakamura & Quinn, Birmingham, Ala., for Anita A. Beesley.

Augusta S. Dowd, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for Hartford Ins. Group.

J. Mark White, White, Dunn & Booker, Birmingham, Ala., for Robert Walters.

## MEMORANDUM OPINION

ACKER, District Judge.

Defendant, Hartford Insurance Group, filed an application for reconsideration of the order and opinion entered by this court on August 14, 1989, denying Hartford's motion to strike the jury demand of plaintiff, Anita Beesley. *Beesley v. The Hartford Fire Insurance Company*, 717 F.Supp. 781, (N.D.Ala.1989). The hereinafter opinion should be read as an addendum to, or expansion of, that earlier opinion.

Not only have the parties themselves more thoroughly briefed the subject in light of the court's opinion of August 14, 1989, but the court has received and carefully considered several excellent *amici curiae* briefs on both sides of the question. *Against* trial by jury in Title VII cases appear USX Corporation, Equal Employment Advisory Council of Washington, D.C., which describes itself as "a nationwide association of employers and trade associations," and the Equal Employment Opportunity Commission. This is an interesting alliance of *amici* on behalf of defendant Hartford. *For* trial by jury in Title VII cases appear Eugene W. Fuquay, a sole practitioner in Birmingham, Alabama, formerly associated with the EEOC, and also the law firm of Chestnut, Sanders, Sanders, Turner, Williams & Pettaway, Alabama's largest black firm, with offices in Selma and Birmingham, as *amici* on behalf of the plaintiff. The court deeply appreciates the assistance which these briefs have provided.

While the sources of the various *amici* briefs (except, perhaps, the EEOC brief) indicate what the two basic protagonists would *like* for the law to be on the subject, as good an indicator of preference is the fact of which this court takes judicial knowledge, namely, that as of September 19, 1989, there were 23 cases pending in this very court in which the *plaintiff* had invoked Title VII and requested a jury trial.[1] It is probable that some of these cases

1.

| POINTER: | 89–CV–1421 | HALTOM: | 89–CV–5321 |
| | 89–CV–969 | | 89–CV–648 |
| | 89–CV–1420 | | 89–CV–1361 |
| | 89–CV–996 | | 89–CV–5386 |
| | 89–CV–1190 | | |
| | 89–CV–988 | PROPST: | 89–CV–1015 |
| | | | 89–CV–1161 |
| HANCOCK: | 88–CV–2226 | | |
| | 89–CV–1290 | CLEMON: | 88–CV–1938 |
| | 89–CV–5400 | | 89–CV–1294 |
| | | | 89–CV–943 |

involve claims in addition to claims brought expressly pursuant to Title VII, but it is significant that such a large number of pending cases involving Title VII contain a plaintiff's jury demand. This fact tends to prove that this court was correct in its opinion of August 14, 1989, in concluding that the "plaintiff versus defendant" attitude toward jury trial in Title VII cases has reversed itself since 1964.

### A Question Deserving Reevaluation

Not just because this court's opinion of August 14, 1989, has created a considerable amount of academic discussion, and even hot debate, but because the issue is a serious one with far-reaching ramifications, this court willingly undertakes another look at the question and, enlightened by the new briefs, will attempt to dig a little deeper than it did on August 14, 1989.

### The Constitutional Provision

The Seventh Amendment is simple and straightforward. Without it and the nine other amendments which constitute the Bill of Rights, historians unanimously agree that the Constitution never would have been ratified. The Seventh Amendment provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

### Rule 38(a), Federal Rules of Civil Procedure

■ As authorized by 28 U.S.C. § 2072, the Supreme Court promulgated Rule 38(a), F.R.Civ.P., which provides:

> The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

A synonym for the word "inviolate" is "unprofaned." This necessarily implies that the right to trial by jury shares that certain sanctity which permeates the entire Bill of Rights.

### What Title VII Itself Says and Does Not Say

■ The *amicus* brief filed by USX argues that Title VII by its express language precludes trial by jury. The argument is based on Title VII's enforcement provision, which contains the following language:

> If the *court* finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the *court* may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the *court* deems appropriate.

42 U.S.C. § 2000e–5(g) (1981) (emphasis USX's).

USX argues that the use of the word "court" proves that Congress intended for the "judge" and not a "jury" to decide all Title VII issues. While there are decisions cited by USX for the proposition that the word "court" means "judge," there are just as many persuasive authorities for the proposition that the word "court" includes

GUIN: 87–CV–501 ACKER: 89–CV–1482 89–CV–1062 88–CV–2352 89–CV–0263

a combination of the persons, including juries, who decide issues in the context of a courtroom. *See McDonald v. Swope,* 79 F.Supp. 30, 35 (M.D.Cal.1948); *In re Caruba,* 139 N.J.Eq. 404, 51 A.2d 446 (1947); *State ex rel Harp v. Vanderburgh Circuit Court,* 227 Ind. 353, 85 N.E.2d 254 (1949); *Peisker v. Chavez,* 46 N.M. 159, 123 P.2d 726, 728 (1942). It is, of course, true, as pointed out by USX, that some courts employed this language in § 2000e–5(g) as a means for construing the statute early on to preclude trial by jury. *Cheatwood v. S. Cen. Bell Tel. & Tel. Co.,* 303 F.Supp. 754, 755–56 (M.D.Ala.1969); *Hayes v. Seaboard Coastline R.R.,* 46 F.R.D. 49, 52–53 (S.D. Ga.1969); and *Culpepper v. Reynolds Metals Co.,* 296 F.Supp. 1232, 1235 (N.D.Ga. 1969), *rev'd on other grounds,* 421 F.2d 888 (5th Cir.1970). Significant, if humorously ironic, the *employer* demanded the jury in all three of these cases cited here by an *amicus employer.* These cases were decided in the very early, tentative, years of the Civil Rights Act of 1964. Out of these cases, however, grew the pervasive assumption, never adopted nor confirmed by the Supreme Court, that neither party is entitled to trial by jury in a Title VII case. Even USX concedes, at p. 10 of its brief:

> The absence of a statutory right to trial by jury does not necessarily preclude a finding that the Seventh Amendment right extends to actions brought pursuant to Title VII.

### What the Supreme Court Has Said and Has Not Said

Long after Title VII had been construed by several lower federal courts to preclude jury trial because of the statutory reference to "court," the Supreme Court was called upon to decide whether or not the Age Discrimination in Employment Act requires trial by jury, even though Congress in the ADEA did not speak to the issue any more than it did in Title VII. The pertinent portion of that Act was, for all intents and purposes, identical to the language of Title VII relied upon by Hartford and USX. It provides in its enforcement section:

> In any action brought to enforce this chapter the *court* shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b) (emphasis supplied).

Interpreting this statute, which certainly authorizes equitable relief, the Supreme Court quickly gave the word "court" a broader meaning than "judge." In *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), Justice Marshall, writing for the Court, held that the ADEA does provide a right to trial by jury. In that case, the plaintiff had sought both reinstatement and lost wages. The Court carefully avoided purporting to decide the question of entitlement to jury trial in Title VII cases, by saying:

> We, of course, intimate no view as to whether a jury trial is available under Title VII as a matter of either statutory or constitutional right.

*Lorillard* 434 U.S. at 583–4, 98 S.Ct. at 872.

Nevertheless, the rationale employed by the unanimous Court in *Lorillard* very well fits Title VII. Justice Marshall proceeded to say that ADEA provides for *"legal"* relief in the form of back wages, thus arguably triggering the absolute right to jury trial under the Seventh Amendment. He followed this by saying that Congress "did not authorize 'legal' relief *in so many words* under Title VII." *Id.* at 584, 98 S.Ct. at 872 (emphasis supplied). This language is susceptible to being read as an implicit recognition by Justice Marshall that a claim for "back wages" constitutes, "in so many words, legal relief." By the simple device of characterizing a remedy as "legal" in one statute and as "equitable" in another statute, Congress, if permitted to do so, could simultaneously abrogate the Seventh Amendment and Rule 38(a), F.R. Civ.P., in any newly created cause of ac-

tion. It is at this point where the battle lines must be drawn.

The *amici* employers here argue that *all* Title VII relief has been declared "equitable," while the *amici* employees respond, "How can that be"? Long before the present Supreme Court's *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), and *Granfinanciera S.A. v. Nordberg,* 492 U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), discussed in this court's opinion of August 14, 1989, the Supreme Court decided *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1975). In *Dairy Queen,* Justice Black, who was well known to be not just fond of, but a devoted believer in, the Bill of Rights, delivered the opinion of the Court. He said:

> At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as "incidental" to equitable issues—for our previous decisions make it plain that no such rule may be applied in the federal courts. In *Scott v. Neely,* decided in 1891, this Court held that a court of equity could not even take jurisdiction of a suit "in which a claim properly cognizable only at law is united in the same pleadings with a claim for equitable relief." That holding, which was based upon both the historical separation between law and equity and the duty of the Court to insure "that the right to a trial by a jury in the legal action may be preserved intact," created considerable inconvenience in that it necessitated two separate trials in the same case whenever that case contained both legal and equitable claims. Consequently, when the procedure in the federal courts was modernized by the adoption of the Federal Rules of Civil Procedure in 1938, 28 U.S.C.A., it was deemed advisable to abandon that part of the holding of *Scott v. Neely* which rested upon the separation of law and equity and to permit the joinder of legal and equitable claims in a single action. Thus Rule 18(a) provides that a plaintiff "may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party." And Rule 18(b) provides: "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."
>
> The Federal Rules did not, however, purport to change the basic holding of *Scott v. Neely* that the right to trial by jury of legal claims must be preserved. Quite the contrary, Rule 38(a) expressly reaffirms that constitutional principle, declaring: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Nonetheless, after the adoption of the Federal Rules, attempts were made indirectly to undercut that right by having federal courts in which cases involving both legal and equitable claims were filed decide the equitable claim first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the party seeking trial by jury on the legal claim was deprived of that right as to these common issues. This procedure finally came before us in *Beacon Theatres, Inc. v. Westover,* a case which, like this one, arose from the denial of a petition for mandamus to compel a district judge to vacate his order striking a demand for trial by jury.
>
> Our decision reversing that case not only emphasizes the responsibility of the Federal Courts of Appeals to grant man-

damus where necessary to protect the constitutional right to trial by jury but also limits the issues open for determination here by defining the protection to which that right is entitled in cases involving both legal and equitable claims. The holding in *Beacon Theatres* was that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as "incidental" to equitable issues or not. Consequently, in a case such as this where there cannot even be a contention of such "imperative circumstances," *Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury.

*Dairy Queen*, 369 U.S. at 470–3, 82 S.Ct. at .896–7 (footnotes omitted).

\* \* \* \* \* \*

The respondents' contention that this money claim is "purely equitable" is based primarily upon the fact that their complaint is cast in terms of an "accounting," rather than in terms of an action for "debt" or "damages." But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.

*Id.* at 477–8, 82 S.Ct. at 899–900.

Adding fuel to Justice Black's civil libertarian flame, Justices Harlan and Douglas concurred as follows:

To render this aspect of the complaint truly "equitable" it must appear that the substantive claim is one cognizable only in equity or that the "accounts between the parties" are of such a "complicated nature" that they can be satisfactorily unraveled only by a court of equity.

\* \* \* \* \* \*

Consequently what is involved in this case is nothing more than a joinder in one complaint of prayers for both legal and equitable relief. In such circumstances, under principles long since established, *Scott v. Neely*, 140 U.S. 106, 110, 11 S.Ct. 712, 714, 35 L.Ed. 358, the petitioner cannot be deprived of his constitutional right to a jury trial on the "legal" claim contained in the complaint.

*Id.* 369 U.S. at 480–81, 82 S.Ct. at 901. This court speculates that the Supreme Court, if now constituted as it was two years before the Civil Rights Act of 1964 became the law, would answer the question *sub judice* with a resounding affirmation of the Seventh Amendment's availability to civil litigants in Title VII cases, except where the *only* relief being sought is strictly and traditionally equitable.

After *Dairy Queen*, along came *Loether*, decided ten years after Title VII had come into being. In *Loether*, the Supreme Court was dealing with the Civil Rights of 1968, Title VIII, but the differences between the two acts are far outweighed by their similarities. Justice Marshall again spoke for the Court. He said:

Section 812 of the Civil Rights Act of 1968, 82 Stat. 88, 42 U.S.C. § 3612, authorizes private plaintiffs to bring civil actions to redress violations of Title VIII, the fair housing provisions of the Act, and provides that "[t]he *court* may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff *actual damages* and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees...." The question presented in this case is whether the Civil Rights Act or the Seventh Amendment requires a jury trial upon demand by one of the parties in an action for damages and injunctive relief under this section.

*Loether*, 415 U.S. at 189–90, 94 S.Ct. at 1006 (emphasis supplied).

\* \* \* \* \* \*

The legislative history on the jury trial question is sparse, and what little is available is ambiguous. *There seems to be some indication that supporters of*

*Title VIII were concerned that the possibility of racial prejudice on juries might reduce the effectiveness of civil rights damages actions.* On the other hand, one bit of testimony during committee hearings indicates an awareness that jury trials would have to be afforded in damages actions under Title VIII. Both petitioner and respondents have presented plausible arguments from the wording and construction of § 812. We see no point to giving extended consideration to these arguments, however, for we think it is clear that the Seventh Amendment entitles either party to demand a jury trial in an action for damages in the federal courts under § 812.

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time. Mr. Justice Story established the basic principle in 1830:

"The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence ... by *common law* [the Framers of the Amendment] meant ... not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights." *Parsons v. Bedford,* 3 Pet. 433, 446–447, 7 L.Ed. 732 (1830) (emphasis in original).

Petitioner nevertheless argues that the Amendment is inapplicable to new causes of action created by congressional enactment. As the Court of Appeals ob-

served, however, we have considered the applicability of the constitutional right to jury trial in actions enforcing statutory rights "as a matter too obvious to be doubted." 467 F.2d, [1110] at 1114 [7th Cir.1972]. Although the Court has apparently never discussed the issue at any length, we have often found the Seventh Amendment applicable to causes of action based on statutes.

\* \* \* \* \* \*

Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.

*Id.* 415 U.S. at 191–4, 94 S.Ct. at 1007–08 (footnotes omitted) (emphasis supplied).

A comparison of Title VIII with Title VII of the Civil Rights Act of 1964, *where the courts of appeals have held that jury trial is not required in an action for reinstatement and back pay, is instructive, although we of course express no view on the jury trial issue in that context.* In Title VII cases the courts of appeals have characterized back pay as an integral part of an equitable remedy, a form of restitution. But the statutory language on which this characterization is based—

"[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate," 42 U.S.C. § 2000e–5(g) (1970 ed., Supp. II)—

contrasts sharply with § 812's simple authorization of an action for actual and punitive damages. In Title VII cases, also, the courts have relied on the fact that the decision whether to award back pay is committed to the *discretion* of the trial judge.

*Id.* at 196–7, 94 S.Ct. at 1009–10 (emphasis partially supplied).

■ Any trial judge who now finds under Title VII that an employee was the victim of discrimination and actually sustained a loss of back pay and/or other employee benefit translatable into money as a proximate consequence of discrimination, and thereafter refuses to enter an award of damages in a so-called "exercise of its discretion," would be, and should be, summarily reversed for abusing his or her discretion. No such "discretion" now exists, if it ever existed. The clear object of Title VIII is *to make the victim whole.* The clear object of Title VII is also *to make the victim whole.* It is impossible to fashion a believable rationale for granting a jury trial in Title VIII while denying it in Title VII.

■ Recognizing that there has never been a *holding* by the Supreme Court on the subject, the *amici* briefs filed by USX and EEAC rely heavily upon the *dictum* in *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), which dealt with the right of jury trial in an ADEA case against the United States. In an expression which was totally unnecessary to that decision, the Court said: "[I]n contrast to the FLSA [Fair Labor Standards Act], there is no right to trial by jury in cases arising under Title VII." 101 S.Ct. at 2703. This *dictum* came not only in a cause in which the issue was not raised but well before *Tull* and *Granfinanciera,* which represent the present Supreme Court's crescendo of renewed recognition of the power and importance of the Seventh Amendment, presaged by *Dairy Queen* and *Loether.* Justice Stewart, who wrote *Nakshian,* is no longer on the Court. Justices Brennan, Marshall and Blackmun, who dissented in *Nakshian* and insisted that a jury trial is available even where the ADEA is invoked against the United States, are still on the Court.

This court agrees with the way *Loether* was analyzed by Messrs. and Mdme. Chestnut, Sanders, Sanders, Turner, Williams & Pettaway, at pp. 2–4 of their *amicus* brief. They said:

*Loether* rejected petitioner's reliance on *NLRB v. Jones & Laughlin [Steel] Corp.,* 301 U.S. 1, [57] S.Ct. 615 [81 L.Ed. 893] (1937), wherein the Court upheld an award of back-pay without a jury trial. The Court stated that *Jones & Laughlin* merely stands for the proposition that the Seventh Amendment is generally inapplicable in administrative proceedings where jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with NLRB's role in the statutory scheme. There is no equivalent barrier to a jury trial in the context of Title VII cases. It is significant that the court did not reject *Jones & Laughlin* on the ground that the relief granted, back-pay was equitable in nature.

\* \* \* \* \* \*

The Court stated that the cause of action under Title VIII was analogous to a number of tort actions recognized at common law and that an action to redress racial discrimination may be likened to an action for defamation or intentional infliction of emotional distress. [note 10 94 S.Ct. at p. 1009]. It would appear that this reasoning applies with equal force to Title VII actions and that both claims should be characterized as actions at law. In *Loether* the Court compared Title VIII with the Civil Rights Act of 1964, but explicitly stated that it expressed "no view on the jury trial issue in that context." The court concluded that the statutory language in Title VII contrasted sharply with that of Title VIII where the latter authorized actual and punitive damages whereas Title VII did not. That distinction while dispositive in the context of Title VIII, is not dispositive of the issue presented under Title VII.

As was observed above, the reasoning behind the finding that back-pay is an equitable remedy rests in part on the fact that it is deemed a form of restitution and in part upon the fact that it rests entirely within the discretion of the judge whether the relief is to be granted. While back-pay may be characterized as

a restitution, it may equally be characterized as damages. The demarcation between *restitution* as an equitable remedy and damages as a remedy at law is not clear, and the cases offer little assistance in determining that distinction. Money recovery called 'damages' is generally based upon plaintiff's loss, while money recovery called restitution is based upon defendant's gain. Viewed in this light back-pay is clearly a measure of defendant's loss and more akin to damages than it is to restitution. In *Tull v. U.S.* the Court determined that the relief demanded was legal in nature but nevertheless held that an assessment of the penalties should be determined by the judge after liability is found. The court's discretion in the context of Title VII cases to award or to refrain from awarding backpay is not different and does not operate to change the legal character of the remedy. Absent a clear indication that Congress intended to override the requirement of the Seventh Amendment it would appear that backpay should be characterized as a legal remedy.

In 1975, the Supreme Court in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), came fairly close to deciding the question of jury trial in Title VII cases, perhaps without realizing it. That case involved an appeal from a district court's refusal to order back pay to blacks who had been discriminated against by their employer. Justice Stewart, who, as noted, later wrote *Nakshian*, authored the opinion. He said:

> It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice," *Brown v. Swann*, 10 Pet. 497, 503, 9 L.Ed. 508 (1836); see also *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–398, 66 S.Ct. 1086, 1088–1089, 90 L.Ed. 1332 (1946). "[W]here federally protected rights have

been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). Title VII deals with legal injuries of an economic character occasioned by racial or other antiminority discrimination. The terms "complete justice" and "necessary relief" have acquired a clear meaning in such circumstances. Where racial discrimination is concerned, "the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). And where a *legal* injury is of an economic character,

> "[t]he general rule is, that when a wrong has been done, and the law gives a remedy, the *compensation* shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock*, 6 Wall. 94, 99, 18 L.Ed. 752 (1867).

The "make whole" purpose of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provisions of the National Labor Relations Act. Under that Act, "[m]aking the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941). See also *Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23; *NLRB v. J.H. Rutter–Rex Mfg. Co.*, 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969). We may assume that Congress was aware that the Board, since its inception, has awarded backpay as a matter of course—not randomly or in the exercise of a standardless discretion, and not

merely where employer violations are peculiarly deliberate, egregious, or inexcusable. Furthermore, in passing the Equal Employment Opportunity Act of 1972, Congress considered several bills to limit the judicial power to award backpay. These limiting efforts were rejected, and the backpay provision was reenacted substantially in its original form. A Section–by–Section Analysis introduced by Senator Williams to accompany the Conference Committee Report on the 1972 Act strongly reaffirmed the "make whole" purpose of Title VII:

> "The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." 118 Cong.Rec. 7168 (1972).

422 U.S. at 418–21, 95 S.Ct. at 2372–73 (emphasis supplied) (footnotes omitted).

It is significant that Justice Stewart, whether unintentionally or deliberately, used the terms "legal injury" and "compensation" to describe "back pay." By analogy, the back pay entitlement under Title VII is no different from the "back pay" recoverable under FLSA, and Justice Stewart knew, of course, that a plaintiff was entitled to a jury trial under the FLSA. In a concurrence, then-Justice, now Chief Justice Rehnquist, recognized and articulated the jury trial problem inherent in the majority opinion:

> In *Curtis, supra [Loether]*, the Court further quoted the description of the Seventh Amendment in Mr. Justice Story's opinion for this Court in *Parsons v. Bed-*

*ford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830), to the effect that:

> "In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights."

> To the extent, then, that the District Court retains substantial discretion as to whether or not to award backpay notwithstanding a finding of unlawful discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial. To the extent that discretion is replaced by awards which follow as a matter of course from a finding of wrongdoing, the action of the court in making such awards could not be fairly characterized as equitable in character, and would quite arguably be subject to the provisions of the Seventh Amendment.

422 U.S. at 443, 95 S.Ct. at 2385.

When the possibility of denying any recovery for "back pay" lost as the proximate consequence of an act of discrimination disappeared after 1975, *the right to deny a jury trial also disappeared.* As speculated convincingly by Schlei & Grossman:

> An argument could be made that a jury trial under Title VII is constitutionally mandated. Such argument would be based on *Albemarle Paper Co. v. Moody,* 422 U.S. 405 [95 S.Ct. 2362, 45 L.Ed.2d 280], 10 FEP 1181 (1975), which removed most discretion of district courts with respect to back pay under Title VII, and *Curtis v. Loether,* 415 U.S. 189 [94 S.Ct. 1005, 39 L.Ed.2d 260] (1974), which required a jury trial under Title VIII of the 1968 Civil Rights Act because of the right to monetary relief.

Schlei & Grossman, *Employment Discrimination Law,* 1135, n. 183 (2d. ed. 1983).

The identical problem was addressed in *Ochoa v. American Oil,* 338 F.Supp. 914, 918–19 (S.D.Tex.1972), a case in which the district court analyzed common law remedies and found Title VII's provisions for

**646**

"back pay" perfectly analogous to an action for breach of contract or wrongful discharge. Nevertheless, the district court there went along with the trend then reflected in Fifth Circuit precedent. That precedent has now been badly eroded, and, in this court's opinion, has been effectively repudiated by the Supreme Court. The *Ochoa* court's reasoning has taken on new life and meaning.

▪ Neither Hartford nor any of its allies in this case ventures the argument that *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), had as a *sub rosa* object the elimination of the jury trial which was being routinely granted in cases where an employee sued his employer simultaneously under Title VII and 42 U.S.C. § 1981. When in *Patterson,* the Supreme Court drastically narrowed the scope of § 1981, expressing the belief that Title VII gives substantially the same remedies, the Court must have meant that those remaining Title VII remedies include the remedy of trial by jury that § 1981 had previously provided. Justice Kennedy delivered the opinion in *Patterson.* Like Beesley, the plaintiff in *Patterson* charged that her employer "had harassed her" and that "this conduct amounted to an intentional infliction of emotional distress." *Patterson* at —, 109 S.Ct. at 2369. In responding to the argument that a narrowing of the relief under § 1981 would wreak havoc among those seeking redress for employment discrimination, Justice Kennedy said:

> The argument is that a substantial overlap in coverage between the two statutes, given the considerable differences in their remedial schemes, undermines Congress' detailed efforts in Title VII to resolve disputes about racial discrimination in private employment through conciliation rather than litigation as an initial matter. After examining the point with care, however, we believe that a sound construction of the language of § 1981 yields an interpretation which does not frustrate the Congressional ob-

jectives in Title VII to any significant degree.

*Id.* at —, 109 S.Ct. at 2371.

Justice Kennedy fully comprehended that "petitioner alleges … racial harassment against her." *Id.* 109 S.Ct. at 2374. Almost as if he were speaking of the instant case, Justice Kennedy then said:

> That egregious racial [sexual] harassment of employees is forbidden by a clearly applicable law (Title VII), moreover, should lessen the temptation for this Court to twist the interpretation of another statute (§ 1981) *to cover the same conduct.*

*Id.* at —, 109 S.Ct. at 2375 (emphasis supplied).

Thus, after *Patterson* there is no longer any question but that Title VII provides monetary relief for *harassment* based on race/sex. Plaintiffs, therefore, no longer need to tack on a § 1981 claim in order to obtain a jury trial. They will, however, necessarily continue to combine with their Title VII claims their claims under the ADEA, the Equal Pay Act, and pendent state claims, all of which, incidentally, guarantee trial by jury for the recovery of lost income. In the five-year cumulative supplement to Schlei & Grossman, just published, the section dealing with jury trial in Title VII says:

> When a claim affording legal remedies such as compensatory and punitive damages is joined with a claim under Title VII,[93] jury trial is available on all factual issues determining the legal claim.[94] Whether a jury trial is available on all issues pertaining to back pay, including entitlement and amount, depends upon the characterization of the remedy as "equitable"[95] or "legal."[96]

---

[93] Generally, these are claims under 42 U.S.C. §§ 1981, 1983, or pendent state law claims. *See generally* Chapter 21 (The Civil Rights Acts Of 1866 and 1871) and Chapter 23 (Related Causes of Action).

[94] As to the legal claim, jury trial is available on both the factual issues pertaining to liability and the amount of recovery. As to the Title VII claim, jury trial is available only on the common issues of fact, while the facts related solely to the Title VII claim, as well as the appropriate equitable remedy, are issues for the court.

*Thomas v. Resort Health Related Facility,* 539 F.Supp. 630, 634, 31 FEP 65, 67 (E.D.N.Y.1982) (Title VII and § 1981); *Powell v. Pennsylvania Hous. Fin. Agency,* 563 F.Supp. 419, 420, 31 FEP 1595, 1596 (M.D.Pa.1983) (Title VII and §§ 1981 and 1983; whether legal claim is "substantial" and will, therefore, support jury demand, should be determined under Rule 56, Fed.R.Civ.P.).

[95] Courts characterizing back pay as an "equitable" remedy (or as a legal remedy incidental to equitable relief) deny jury trial. *Williams v. Owens–Illinois,* 665 F.2d 918, 929, 27 FEP 1273, 1281 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283, 30 FEP 56 (1982) (back pay "properly viewed as either equitable or as a legal remedy incidental to an equitable cause of action").

[96] Courts characterizing back pay as a "legal" remedy grant jury trial on all related factual issues. *Thomas v. Resort Health Related Facility, supra* note 94; *Powell v. Pennsylvania Hous. Fin. Agency, supra,* note 94.

Schlei & Grossman, *Employment Discrimination Law,* 427 (2d ed. Supp.1989).

In this court's humble opinion, it is just as unrealistic and disingenuous to call "front pay" an equitable remedy, as it is to call "back pay" an equitable remedy. The loss of future earnings constitutes damages of the kind today regularly and routinely submitted to a jury for resolution in other kinds of cases.

The Eleventh Circuit, as recently as August 29, 1989, decided *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041 (11th Cir.1989), an ADEA case for wrongful discharge in which the terminated employee sought "back wages." The Eleventh Circuit, upon which Justice Powell sat by special designation, speaking through Judge Hill, said:

> A jury found that Mr. Verbraeken's age was a determinative factor in his layoff from employment by Westinghouse and awarded him $99,446.00 in *compensatory damages.*

881 F.2d at 1044 (emphasis supplied).

Thus, the Eleventh Circuit less than two months ago characterized "back pay" as "compensatory damages," the kind of damages which have always involved jury determination under the Seventh Amendment.

It is true, of course, that plaintiff Beesley not only claims a wrongful discharge arising out of the sexual harassment, but claims harassment in the work place for which she seeks damages in the forms of a monetary award for mental anguish. She sues both her employer and the alleged individual supervisor-transgressor. Her complaint charges, *inter alia:*

> Plaintiff was denied a job promotion and pay increase and, on or about December 31, 1988, discharged from her employment with the Defendant ... after repeatedly rejecting the unsolicited and unwanted sexual advances of her male supervisor, Defendant Robert L. Walters
>
> . . .

She also seeks punitive damages, to which she would most certainly be potentially entitled pursuant to her pendent state claims for assault and battery, false imprisonment, libel and intentional infliction of emotional distress. Assuming that the language of *Albemarle* about Title VII's purpose being to make the "employee whole" is still viable, allowing nothing beyond "nominal damages" for a series of uninvited sexual assaults, even without any accompanying demotion or discharge, would render a Title VII sexual harassment claim, as a practical matter, meaningless. When the Eleventh Circuit in *Henson v. Dundee,* 682 F.2d 897 (11th Cir.1982), with Judge Clark both concurring and dissenting, refused to recognize a monetary recovery for sexual harassment unless it resulted in a discharge, the Court was, in fact, dealing with a claim of discharge which it then found *not to exist.* It was not dealing with a sexual harassment case, where, as here, there is still an allegation of wrongful discharge. Furthermore, *Henson* was decided before *Patterson* and before *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), to be discussed *infra.*

Hartford and those who join it as *amici* fault this court's reasoning of August 14, 1989, which described the difficulty in trying "legal" claims to a jury while reserving "equitable" claims for the court. This problem was recognized but not fully resolved by the Eleventh Circuit in *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.1983), when it said: "When a par-

ty has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." In the instant case, what would this court do with a jury verdict limited to a finding that defendant Walters, while employed by Hartford, committed an assault and battery on Beesley, and that when she resisted him he fired her? Or could the second part of this question even be submitted to the jury? The overlapping of issues provides the potential for a thousand jury interrogatories.

In Hartford's brief, it argues that Beesley seeks monetary damages, separate from the discharge, for the alleged sexual harassment, plus punitive damages, and that such admittedly "legal damages" are not recoverable under Title VII. This is, perhaps, Hartford's best argument. Yet, it was answered by the Supreme Court in *Meritor*, in which the Court, speaking through then-Justice Rehnquist, said:

This case presents important questions concerning claims of workplace "sexual harassment" brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.* 477 U.S. at 59, 106 S.Ct. at 2401.

\* \* \* \* \* \*

She sought injunctive relief, *compensatory and punitive damages* against Taylor and the bank, and attorney's fees. *Id.* at 60, 106 S.Ct. at 2402 (emphasis supplied).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The prohibition against discrimination based on sex was added to Title VII at the last minute on the floor of the House of Representatives. 110 Cong.Rec. 2577–2584 (1964). The principal argument in opposition to the amendment was that "sex discrimination" was sufficiently different from other types of discrimination that it ought to receive separate legislative treatment. See *id.,* at 2577 (statement of Rep. Celler quoting letter from United States Department of Labor); *id.,* at 2584 (statement of Rep. Green). This argument was defeated, the bill quickly passed as amended, and we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on "sex."

Respondent argues, and the Court of Appeals held, that unwelcome sexual advances that create an offensive or hostile working environment violate Title VII. Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex. Petitioner apparently does not challenge this proposition. It contends instead that in prohibiting discrimination with respect to "compensation, terms, conditions, or privileges" of employment, Congress was concerned with what petitioner describes as "tangible loss" of "an economic character," not *"purely psychological aspects of the workplace environment."* Brief for Petitioner 30–31, 34. In support of this claim petitioner observes that in both the legislative history of Title VII and this Court's Title VII decisions, the focus has been on tangible, economic barriers erected by discrimination.

*We reject petitioner's view. First, the language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent " 'to strike at the entire spectrum of disparate treatment of men and women' " in employment.* *Id.* at 63–64, 106 S.Ct. at 2404 (emphasis supplied).

\* \* \* \* \* \*

[T]he District Court apparently believed that a claim for sexual harassment will not lie absent an *economic* effect on the complainant's employment. See *ibid.* ("It is without question that sexual harassment of female employees in

which they are asked or required to submit to sexual demands as a *condition to obtain employment or to maintain employment or to obtain promotions* falls within protection of Title VII") (emphasis added). Since it appears that the District Court made its findings without ever considering the "hostile environment" theory of sexual harassment, the Court of Appeals' decision to remand was correct.

Second, the District Court's conclusion that no actionable harassment occurred might have rested on its earlier "finding" that "[i]f [respondent] and Taylor did engage in an intimate or sexual relationship ..., that relationship was a voluntary one." *Id.*, at 14,692, 23 FEP Cases, at 42. But the fact that sex-related conduct was "voluntary," in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit brought under Title VII. The gravamen of any sexual harassment claim is that the alleged sexual advances were "unwelcome." 29 CFR § 1604.11(a) (1985). While the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact, the District Court in this case erroneously focused on the "voluntariness" of respondent's participation in the claimed sexual episodes. The correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome, not whether her actual participation in sexual intercourse was voluntary.

*Id.* at 67–9, 106 S.Ct. at 2406.

\* \* \* \* \* \*

While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible.

*Id.* at 72, 106 S.Ct. at 2408.

This language is reminiscent of Judge Clark's concurring opinion in *Dundee*, where Judge Clark said:

"Sexual harassment" is defined by 29 C.F.R. § 1604.11(a)(3) to include "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or *creating an intimidating, hostile, or offensive working environment.*" (Emphasis added.) Subsection (c) of 29 C.F.R. § 1604.11 provides that an employer "is responsible for its acts and those of its ... *supervisory employees* with respect to sexual harassment ... regardless of whether the employer knew or should have known of their occurrence." Subsection (d) provides, however, that an employer is not liable for acts of sexual harassment by co-workers unless the employer knew or should have known of the conduct.

These regulations made a clear distinction between a hostile environment created by a supervisor and one created by a co-worker, and provide that the employer is liable in the former situation regardless of whether it "knew or should have known" of the unlawful conduct. I would hold that a woman in the workplace should be able to obtain relief against an employer when her supervisor creates a hostile working environment without having to prove that the employer knew about it. An employer delegates certain responsibilities to its supervisors, one of which certainly is to create a pleasant working environment. If the supervisor uses his position to create a hostile, sexually harassing work environment, the employer should be liable.

682 F.2d at 913.

This does not sound like a judge who is unwilling to compensate a women for the humiliation and degradation resulting from sexual harassment even though she neither is fired nor quits. This court believes that Judge Clark probably spoke for a majority of the Eleventh Circuit. But, if not, Beesley *was, in fact, fired.*

It is abundantly clear from *Meritor*, and from Judge Clark in *Dundee*, that the victim of "simple" sexual harassment is due more than nominal damages even though *no* measurable economic harm results. This recognition necessarily means that the trier of fact must compensate in the only way possible, namely, by placing a monetary figure on the plaintiff's fear and anguish, a task juries are regularly called upon to perform. Some courts grant no relief whatsoever under Title VII to these victims of sexual harassment where not accompanied by economic loss. *Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235 (7th Cir.1989). There is, of course, authority that would limit a recovery for simple sexual harassment under Title VII to "nominal damages." *See Huddleston v. Roger Dean Chevrolet*, 845 F.2d 900 (11th Cir.1988), before the *Meritor* erosion. Although this court would personally disagree with any such limitation, this court cannot avoid pointing out the obvious, namely, that "nominal damages" do constitute a *legal* and not an *equitable* remedy. *Chaffin v. Fries Mfg. & Power Co.*, 135 N.C. 95, 47 S.E. 226 (1904); *Bancroft v. Taylor*, 91 F.2d 579 (5th Cir.1937). This idea has received no consideration in the briefs. If it had, there might have been the temptation to say that "nominal damages" cannot exceed the magic "twenty dollars" provided as the *sine qua non* for invoking the Seventh Amendment; but "nominal damages" *can exceed twenty dollars. Citizens' Committee of the North End v. Hampton*, 19 Conn.Sup. 375, 114 A.2d 388 (1955); and *Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Pub. Co.*, 42 Tenn.App. 92, 298 S.W.2d 788 (1956).

The foregoing discussion and conclusions do not depend upon whether or not punitive damages are recoverable under Title VII. This court notes, however, that the *Meritor* plaintiff expressly sought punitive damages, and the Supreme Court, which could easily have said "No" to punitive damages, carefully avoided saying anything in *Meritor* on the subject. Instead, the Supreme Court indicated clearly that a plaintiff in a Title VII action can recover intangibles, such as damages for psychological trauma.

### A Distinction for the EEOC?

 The EEOC has never previously taken a formal position on this issue. Its position has always been *ad hoc* until this moment. Disassociating itself somewhat from Hartford, USX and EEAC, the EEOC argues that even if private litigants are entitled to jury trials in Title VII cases, it does not necessarily follow that the same is true in class actions brought by the EEOC. *Ochoa, supra*, and *Granfinanciera, supra*, note a "public rights" exception to the Seventh Amendment, under which a "suit brought by a public official or governmental agency" may "suspend operation of the Seventh Amendment." *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2802–5 (Scalia, J., concurring). Such an exception, if it exists, is not available for Hartford in this case.

For those who argue that the absence of any verbalized mandate for trial by jury in the language of a federal statute creating a new cause of action invariably manifests a legislative intent that the new cause be resolved by a judge without a jury, the rebuttal comes from all of the cases discussed above. These cases engraft the Seventh Amendment upon the statutory cause *unless Congress expressly disclaims that engrafting for a legitimate reason.* The Seventh Amendment never guaranteed that juries will accomplish perfect justice any more than Article III of the Constitution guaranteed that judges will be perfect, but the Seventh Amendment *does* guarantee that juries will try civil cases exceeding twenty dollars in value. A recent confirmation of the principle of statutory construction which interprets a statute, if possible, so as to make it constitutional, is *United Transportation Union Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282, (6th Cir.1989), wherein the Sixth Circuit overruled a district court's striking of a jury demand in a case brought under the Railway Labor Act against an international union for alleged breach of the duty of fair representation. Frankly admitting the existence of conflict among the circuits, the

Sixth Circuit went straight to the Seventh Amendment and held:

> There is a conflict among the circuits as to the right to a jury trial in the context of breach of duty of fair representation cases in which legal remedies are sought. The unchallenged rule prior to two Supreme Court rulings, *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) and *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), was that under *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) there existed a right to trial by jury in such cases. *See Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir. 1979); *Minnis v. UAW*, 531 F.2d 850, 853 (8th Cir.1975). A case decided after 1983 but not considering the potential effect of *Mitchell* and *DelCostello* reached the same result. *See Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 (5th Cir. 1984). The eleventh circuit has decided that the recent Supreme Court rulings undermine the analysis behind the former rule and compel the denial of any right to a jury trial in a duty of fair representation case. *Leach v. Pan American World Airways*, 842 F.2d 285, 290–91 (11th Cir.1988). Conversely, two other circuits considering the influence of *Mitchell* and *DelCostello* have determined that the issue addressed in those cases did not significantly help in making the legal/equitable characterization that is essential to resolution of the jury issue. These courts came to the conclusion that litigants have a right to jury trial in duty of fair representation cases in which legal remedies are sought. *Terry v. Chauffeurs, Teamsters & Helpers, Local 391*, 863 F.2d 334, 339 (4th Cir. 1988); *Quinn v. DiGiulian*, 739 F.2d 637, 646 (D.C.Cir.1984). Because we agree that the Supreme Court cases have little bearing on the nature of duty of fair representation cases for seventh amendment purposes, and because we are persuaded that the character of this action is legal, we join these latter circuits in concluding that there is a right to trial by jury in this case.

The seventh amendment to the United States Constitution states that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The seventh amendment applies if an "action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether*, *supra*, at 195, 94 S.Ct. at 1009. Thus, the seventh amendment covers all suits that are not of equity or admiralty jurisdiction. *Id.* at 193, 94 S.Ct. at 1008; *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970); *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830). Whether there is a right to jury trial in a particular case depends on the nature of the issue to be tried rather than the character of the overall action. *Ross* at [396 U.S.] 537–38, 90 S.Ct. at 737–38. Consequently, the right to a jury trial on legal issues must be preserved in a case presenting both legal and equitable issues. *See Hildebrand v. Board of Trustees of Michigan State University*, 607 F.2d 705, 707 (6th Cir.1979), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982) (citing *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

The "legal" nature of an issue is determined by considering, first, the premerger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries. *Ross, supra,* [396 U.S.] at 538 n. 10, 90 S.Ct. at 738 n. 10. After *Curtis v. Loether, supra,* the primary focus in this circuit in analyzing the nature of an issue for seventh amendment purposes is on the second consideration set forth in *Ross,* the type of relief sought. *Hildebrand, supra,* at 708. If a party seeks solely injunctive relief or backpay, the relief sought is equitable and there is no right to a trial by jury. *See, e.g., Harris v. Richards Mfg. Co.,*

675 F.2d 811, 815 n. 2 (6th Cir.1982); *Moore v. Sun Oil Co.*, 636 F.2d 154, 156 (6th Cir.1980); *Hildebrand, supra,* at 708. A party seeking compensatory damages or punitive damages is entitled to a jury trial. *Moore, supra,* at 157; *Hildebrand, supra,* at 708. We observe that punitive damages, though requested in this action, are not available in breach of duty of fair representation cases. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 52, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979); *see also Quinn v. DiGiulian,* 739 F.2d 637, 647 (D.C.Cir.1984) (*Foust* establishes *per se* rule barring recovery of punitive damages in duty of fair representation cases). Therefore, to the extent that the nature of this action depends on the nature of the relief sought, the request for punitive damages will not be considered.

In addition to the prayer for punitive damages and injunctive relief, the Second Amended Complaint contained a prayer for "compensatory damages." We hold that the nature of the remedy requested by Local 74, insofar as it prays for compensatory damages, is legal.

881 F.2d at 285–86 (footnote omitted). While the Sixth Circuit seems to quarrel somewhat with the Eleventh Circuit, it would not quarrel with the Eleventh Circuit's very recent *United States v. M.C.C. of Florida, Inc.*, 863 F.2d 802 (11th Cir. 1989), involving the Federal Water Pollution Control Act, which nowhere contained any mention of trial by jury, but in which the Eleventh Circuit found the Seventh Amendment to be the overriding consideration.

### Conclusion

▮▮▮▮▮ As this court held in its earlier opinion here being rethought, the specific question here under reexamination has not been expressly decided by the Supreme Court and in theory remains open. Nevertheless, this court feels free to consider the question in light of Supreme Court precedent that post-dates any contrary Eleventh Circuit decisions which otherwise would be binding. Hartford's insistence that *Tull*

and *Granfinanciera* make no difference cannot divert this court's attention from the seriousness of the founding fathers when they adopted the Seventh Amendment, nor from the absence of any express holding by the Supreme Court as to the entitlement to a jury trial in Title VII cases. A jury trial is guaranteed by the Seventh Amendment when an employee seeks what can only be fairly described as "compensatory damages," whether in the form of lost wages or monetary compensation (even "nominal damages") for harassment based on sex or race, and whether or not that harassment results in a discharge or other economic loss. While the question of entitlement to punitive damages under Title VII after *Patterson* is still open as a question, which, if answered in favor of Beesley, would even more clearly entitle her to the jury trial she would have received under a § 1981 claim for punitive damages but for *Patterson,* it is unnecessary to this decision that the question of the viability of Beesley's claim for punitive damages be decided one way or the other. This court will await either the trial itself or a motion for partial summary judgment before ruling upon the question of plaintiff's entitlement to punitive damages.

To recapitulate:

1. "Back pay" is a form of compensatory or "legal damages" no matter under what statute or common law cause it is recoverable.

2. The victim of sexual harassment is entitled to "legal damages" and has a claim akin to one at common law.

3. The Seventh Amendment entitles a party to a jury trial on all "legal" claims.

4. To try to unmix jury verdicts from judge-made decisions on the same or overlapping factual questions is bothersome at best, impossible at worst. Whether sorting out the decisions on the issues in a hybrid Equal Pay Act–Title VII suit would be more puzzling for the court or for the jury would make a good topic for a law review article.

In view of the foregoing, the court finds no reason to retreat from its opinion of August 14, 1981. Hartford's motion for a

vacation of the earlier order honoring Beesley's jury demand, will be denied.